**Lanny L. VICKERS, Plaintiff,**

v.

**The VETERANS ADMINISTRATION, et al., Defendants.**

**No. C81–85V.**

United States District Court, W.D. Washington.

Aug. 31, 1982.

Eugene M. Moen, of Chemnick & Moen, Seattle, Wash., for plaintiff.

William H. Rubidge, Asst. U.S. Atty., Tacoma, Wash., for defendants.

## MEMORANDUM DECISION

VOORHEES, District Judge.

From the credible evidence presented at the trial of this cause, the Court now renders the following decision:

1. The issues before this Court are these:

(a) Does the plaintiff have a cause of action against his superior, David Radke, Chief of Supply Service at the Veterans Administration Medical Center in Seattle, Washington?

(b) Does the plaintiff have a cause of action against the Veterans Administration under the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794, for money damages or for equitable relief?

2. This is not an action to determine whether *all* government employees have a right to work in offices which are free from tobacco smoke. It is an action solely to determine whether this one plaintiff has the right to work in an environment wholly free from tobacco smoke.

3. Plaintiff is entitled to recover damages of and from David Radke only if plaintiff established by a preponderance of the evidence that David Radke, in his actions relative to plaintiff, violated a clearly-established statutory or constitutional right of plaintiff. *Harlow v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

4. From the evidence in this cause the Court is unable to find that David Radke did in fact at any time violate any clearly-established right of plaintiff. The complaint of plaintiff against David Radke must in consequence be dismissed with prejudice.

5. The question then remains as to whether plaintiff is entitled to any kind of relief against the Veterans Administration as a handicapped person under the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794. The Court ruled prior to trial that § 794 does permit a private right of action for damages or for equitable relief.

6. The Court finds that plaintiff is a handicapped person within the meaning of the term "handicapped person" as defined in 29 U.S.C. § 706(7)(B). That sub-

section provides that any person is a "handicapped" person within the contemplation of 29 U.S.C. § 794 if that person has a physical impairment which substantially limits one or more of his or her major life activities. It appears from the evidence in this cause that plaintiff is unusually sensitive to tobacco smoke and that this hypersensitivity does in fact limit at least one of his major life activities, that is, his capacity to work in an environment which is not completely smoke free.

7. The finding by the Court that plaintiff is a handicapped person within the meaning of the Act does not, however, dispose of this matter. In order for the Court to find that plaintiff is entitled to recover money damages from the Veterans Administration or that plaintiff is entitled to some kind of equitable relief, the Court must find that the Veterans Administration discriminated against plaintiff by reason of his handicap.

8. 29 U.S.C. § 794 provides as follows: "No otherwise qualified handicapped individual in the United States, as defined in Section 706(7) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination . . . under any program or activity conducted by any Executive agency or by the United States Postal Service."

9. In his trial brief plaintiff asserts that because of plaintiff's complaints and this lawsuit, Mr. Radke has indicated resentment and anger toward plaintiff by means of non-verbal expressions of animosity towards plaintiff, by statements made to other employees about plaintiff and the smoking issue, and by efforts to limit work assignments to plaintiff and to prevent his promotion. The Court found no credible evidence in the record to sustain any one of these contentions.

10. The Court finds further no evidence in the record that plaintiff has in any way been discriminated against in terms of work assignments, pay or promotions by reason of his hypersensitivity to tobacco smoke, by reason of his complaining to his superiors about the presence of tobacco smoke in his work environment, or by the commencement of this action. Plaintiff has regularly received high performance ratings for his work and has been awarded at least three incentive awards, which have resulted in higher pay for him.

11. The Court is unable to find in the words of § 794 that plaintiff has been, solely by reason of his handicap excluded from the participation in or denied the benefits of any program or activity conducted by the Veterans Administration.

12. Plaintiff asserts, however, that he has been discriminated against because of the failure of the Veterans Administration "to make reasonable accommodations to his physical handicap by providing a work environment that is free of tobacco smoke."

13. Plaintiff has failed to cite any authority from the decided cases to the effect that the Veterans Administration was under a duty to make "reasonable accommodations" to plaintiff's sensitivity to tobacco smoke. Assuming, but not deciding, that the Veterans Administration was under such a duty, the Court finds from the evidence that the Veterans Administration did make reasonable efforts to accommodate to plaintiff's handicap.

14. Plaintiff is employed in the Purchasing and Contracts Section of the Supply Service Department at the Veterans Administration Medical Center. The employees in that section have their desks in Room 105–C in Building 15. This building is a temporary one. It is contemplated that within two years all of the Supply Service employees will be moved out of that building and into new quarters in a building now under construction. Ten employees have their desks in Room 105–C. Some of them smoke; some do not. Room 105–C is relatively quite crowded as there are more desks and more employees in that room than the available space can comfortably accommodate. In that room are seven windows, which can be opened and closed, and one double door. This double door may be opened or "cracked" to admit fresh air.

Two rather large circulating fans are located in this room.

15. Immediately adjacent to Room 105–C is Room 105–D in which are located those employees who are in the Personal Property Management Section of the Supply Service Department. There are eight employees in this section. Some of these employees smoke; some do not.

16. In February, 1979 the Deputy Administrator of the Veterans Administration at the direction of the Administrator promulgated a nationwide policy relative to smoking at the facilities of the Veterans Administration. One of the provisions of that policy was as follows:

"In establishing and continuing a smoking policy in work areas under their jurisdiction, supervisors should strive to maintain an equitable balance between the rights of smokers and nonsmokers."

17. In February, 1980 the Director of the Veterans Administration Medical Center in Seattle promulgated a policy relative to smoking in the facility. That policy provided that smoking was to be permitted in office areas. By virtue of that promulgated policy employees were permitted to smoke in Rooms 105–C and 105–D.

18. From time to time plaintiff has made known to his superiors his sensitivity to tobacco smoke and has urged that action be taken by them to make it possible for him to work in a smoke-free environment.

19. In an effort to accommodate to plaintiff's handicap the following has been done by the Veterans Administration:

(a) After plaintiff's initial complaint the desks of smokers were physically separated in the office from the desks of the nonsmokers.

(b) Thereafter Mr. Radke sought and was able to secure a voluntary agreement by those who work in the same office as plaintiff (Room 105–C) not to smoke at any time in that room.

(c) Later, Mr. Radke sought and was able to secure a voluntary agreement by those who work in Room 105–D, the office adjacent to Room 105–C, that they would not smoke at any time in that room.

(d) Mr. Radke submitted a requisition for an exhaust system to be installed in Room 105–C in the hope that this system would remove whatever tobacco smoke might drift into Room 105–C from rooms where smoking was still permitted. This request was, however, turned down by the Engineering Department because its cost was considered to be excessive in light of the fact that Building 15 was only a temporary building and the employees in Supply Service were to be transferred from that building to a new building.

(e) Mr. Radke was able to have two vents installed in the ceiling of Room 105–C in an effort to withdraw from that room any tobacco smoke that might drift into it from other areas.

(f) Mr. Radke purchased at his own expense an air purifier in an effort to alleviate the effects of his smoking in his own private office, Room 105–B.

(g) Mr. Radke offered to have a partition constructed around plaintiff's desk. This partition would have extended from floor to ceiling and have a door.

(h) Plaintiff was given the opportunity to move his desk farther away from the door leading from Room 105–C to 105–D and closer to a window.

(i) Plaintiff has been offered an outside maintenance job by defendant Veterans Administration.

20. The voluntary action by the smokers in Rooms 105–C and 105–D has significantly reduced the presence of tobacco smoke in plaintiff's work space in Room 105–C.

21. At the time plaintiff complained to his supervisor about the adverse effects of tobacco smoke upon his health, Mr. Radke was faced with the problem of trying to accommodate the desires of plaintiff with the desires of the smokers whose desks were in Rooms 105–C and 105–D. It appears from the testimony of plaintiff that some of those individuals were "heavy" or

"very heavy" smokers. Under the national policy of the Veterans Administration he was under a duty to "strive to maintain an equitable balance between the rights of smokers and nonsmokers." In light of the policy promulgated by the Director of the Veterans Administration Medical Center in Seattle that smoking was to be permitted in offices, Mr. Radke could not have ordered that there be no smoking in Rooms 105–C and 105–D without running into the objection by the smokers in those rooms that they were permitted by the Director's policy to smoke at their desks and that Mr. Radke did not have the authority to override that policy. He was faced, too, with the problem that some of the employees in Room 105–C wanted to have the windows open; some insisted that they be closed. Some wanted the temperature of the room relatively high; some wanted it relatively low. These opposing attitudes made it, of course, difficult to arrive at a mutually satisfactory arrangement with respect to whether the windows would be open or closed.

22. The only tobacco smoke to which plaintiff is now exposed is that which may at times drift into Room 105–C from Room 105–A or 105–B. This drifting in of smoke is not a constant phenomenon and, when it does occur, the smoke is normally not heavy in concentration. At the time of the voluntary commitments by the smokers in Rooms 105–C or 105–D, and as an accommodation to them in exchange for their agreeing not to smoke at their desks, Mr. Radke gave them permission to smoke in Room 105–A, the office of the Assistant Chief of Supply Service, or, when on business, to smoke in his own office, Room 105–B.

23. In light of all of the foregoing the Court finds that the Veterans Administration did make a reasonable effort to accommodate to plaintiff's handicap while at the same time attempting to accommodate to those who felt the need to smoke during working hours.

24. Plaintiff would like to have everyone in Supply Service be forbidden to smoke in order that he would not be exposed at any time to tobacco smoke. The Director of the Medical Center has not, however, banned smoking in any of the office spaces of the Center. The Veterans Administration has not adopted a policy against smoking in any of its offices. Congress has not enacted any legislation which forbids smoking in office working spaces in any of the office buildings owned by the United States.

25. Had Congress enacted legislation or the Veterans Administration adopted a policy or the Director of the Medical Center promulgated a directive forbidding the smoking of tobacco in any office space, this Court would readily enforce that ban. In the absence, however, of a statute or regulation forbidding the smoking of tobacco in government office spaces those Supply Service employees who smoke have certain rights which must be balanced against the desire of plaintiff that his working environment be completely free of tobacco smoke. Until and unless Congress enacts a statute banning the smoking of tobacco in government offices or the Veterans Administration promulgates a policy against smoking in its offices, the desires of those employees who wish to smoke cannot be disregarded.

26. In order to minimize the effect of tobacco smoke upon himself, plaintiff must himself take action to avoid his exposure to tobacco smoke. It appears that plaintiff can at any time close the door which separates Room 105–C from 105–D and that this would have the effect of preventing the entrance into Room 105–C of any smoke which might drift out of Rooms 105–A or 105–B. Although it is somewhat of an inconvenience and perhaps a nuisance to close that door, it appears to the Court that plaintiff would choose to do that rather than to have himself exposed to the tobacco smoke to which he is sensitive. There is no prohibition against the closing of that door, and the Chief of the Purchasing and Contracts Section testified that it was immaterial to him whether that door was kept in a closed or an open position.

27. In addition the desk of plaintiff is located but one desk away from the door

which separates Rooms 105–C and 105–D. Plaintiff was advised that he could move his desk farther away from that door and closer to a window if he desired to do so, but he has chosen to have his desk remain in its present position. The Court is of the opinion that moving his desk would undoubtedly reduce his exposure to smoke.

28. By reason of the foregoing the Court finds that plaintiff is not entitled to injunctive relief nor to damages as against defendant Veterans Administration.

29. This Memorandum Decision will be in lieu of formal findings of fact and conclusions of law.