**Susan Mary KAMEN,
Plaintiff-Appellant,**

v.

**AMERICAN TELEPHONE & TELE-GRAPH CO., Patricia McDonald and Carol Buckham, Defendants-Appellees.**

**No. 706, Docket 85–7799.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 21, 1986.
Decided May 23, 1986.

---

Robert L. Becker, Raff & Becker, New York City (David Seth Michaels, New York City, of counsel), for plaintiff-appellant.

Eric Rosenfeld, New York City (Seyfarth, Shaw, Fairweather & Geraldson, New York City, of counsel), for defendants-appellees.

Before OAKES, KEARSE and PRATT, Circuit Judges.

OAKES, Circuit Judge:

In this case—one involving a questionable grant of a motion to dismiss—the district court imposed Rule 11 sanctions on the plaintiff or the plaintiff's attorney apparently for failure to make "reasonable inquiry" into the action's jurisdictional basis before filing the complaint. Purporting to follow *Eastway Construction Corp. v. City of New York*, 762 F.2d 243 (2d Cir. 1985), the district court ordered payment of $4,000 in attorneys' fees and $12 in expenses to the defendants, without stating whether the sanctions were imposed on client, counsel, or both. We reverse.

## BACKGROUND

Plaintiff, Susan Mary Kamen, sought an injunction and damages under section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (1982), and the New York Human Rights Law, N.Y.Exec.Law § 296 (McKin-

ney 1982 & Supp.1986) from her employer, AT & T Communications, Inc. (ATCOM),[1] and two of her supervisors. The complaint alleged that plaintiff had a life-long history of severe tobacco smoke hypersensitivity and was a protected person within both section 7(7)(B) of the Rehabilitation Act, 29 U.S.C. § 706(7)(B) (1982), and the N.Y. Exec.Law § 292(21) (McKinney Supp.1986). *See Vickers v. Veterans Administration,* 549 F.Supp. 85, 86–87 (W.D.Wash.1982) (plaintiff who is hypersensitive to tobacco smoke is "handicapped person" as defined in 29 U.S.C. § 706(7)(B)). Plaintiff allegedly had numerous reactions when exposed to smoke, including difficulty in breathing, severe pain and discomfort, faintness, nausea, and headaches, but in no other respect did her medical condition affect her ability to perform her job. According to the complaint, when Kamen, who had worked for the American Telephone & Telegraph Company (AT & T) or its recently formed subsidiary ATCOM for over twelve years, was assigned to a new supervisor, co-defendant Patricia McDonald, and the new supervisor (breaking with the practice of Kamen's previous supervisors) refused to provide her with a smoke-free environment, defendants violated the Rehabilitation Act and the New York Human Rights Law. The complaint also alleges that a violation of these laws occurred when McDonald suspended plaintiff for two days in February, 1985, for "insubordination" because Ms. Kamen had sought medical assistance from company physicians.

In order for the employer ATCOM to be subject to the Rehabilitation Act, it must have received "Federal financial assistance." 29 U.S.C. § 794 (1982).[2] Paragraph 6 of the complaint alleged on information and belief that "defendant AT & T is a recipient of federal funds." After the complaint was filed, but before filing an answer, an ATCOM attorney telephoned plaintiff's counsel twice to inform him that ATCOM received no "Federal financial assistance" within the meaning of section 504, and insisted that plaintiff voluntarily discontinue her action. On July 9, 1985, the same day as the second telephone call, counsel for ATCOM hand-delivered a letter to plaintiff's counsel, asserting for a third time that ATCOM received *"no 'federal financial assistance,'"* and threatening that if plaintiff did not voluntarily dismiss her case the defendants would seek sanctions, including attorneys' fees and costs incurred "in defending this improperly filed action." On July 10, 1985, plaintiff's counsel sent a letter to ATCOM's counsel in which he pointed out that he "would be remiss in advising a client to dismiss her case against AT & T Communications, Inc. based solely upon defendants' counsel's representation...." Plaintiff's counsel indicated that he had nothing before him to permit him to determine that the parties agreed upon the meaning of federal financial assistance or, assuming agreement, to verify ATCOM's representation that it received none. Accordingly, he requested ATCOM to provide him with a statement of "every grant, loan, or contract, or any other agreement by which federal funds or services of federal personnel are received by AT & T Communications, Inc.," including the purpose of

---

1. AT & T Communications, Inc. (ATCOM), is a wholly owned subsidiary of American Telephone & Telegraph Co. (AT & T). Kamen's complaint named AT & T, by whom she was previously employed, as a defendant. Apparently as a result of the breakup of AT & T, Kamen's employer at the time of the events at issue had become ATCOM.

2. For purposes of implementing section 504 of the Rehabilitation Act, the Department of Justice has defined federal financial assistance as any grant, loan, contract (other than a procurement contract or a contract of insurance of guaranty), or any other arrangement by

which the agency provides or otherwise makes available assistance in the form of:
   (1) Funds;
   (2) Services of Federal personnel; or
   (3) Real and personal property or any interest in or use of such property, including:
   (i) Transfers or leases of such property for less than fair market value or for reduced consideration; and
   (ii) Proceeds from a subsequent transfer or lease of such property if the Federal share of its fair market value is not returned to the Federal Government.
28 C.F.R. § 41.3(e) (1985).

the grant, loan or contract, dollar amount and government agency involved. He also sought copies of government documents evidencing the grant, loan or contract as well as information as to any federal government personnel on loan to ATCOM. Counsel's letter then offered "unquestionably and without hesitation" to dismiss the instant action if the information provided showed, upon analysis, that ATCOM did not receive federal financial assistance. Counsel's letter also noted that in light of AT & T's history of accommodating plaintiff's sensitivity to smoke during most of her twelve years of employment, "there is ample room upon which we could simply and swiftly resolve the merits of this small, but important dispute." Counsel received a telephone call from defendants' counsel and again explained that the request for injunctive relief could be simply resolved by permitting plaintiff to work as she had previously in a no smoking area and by obtaining co-workers' consent not to smoke during meetings attended by plaintiff. A few days later, on July 22, 1985, defendants filed their motion for dismissal for lack of subject matter jurisdiction and for failure to state a claim, Fed.R.Civ.P. 12(b)(1) and (6), and for sanctions.

The motion for dismissal was supported by two affidavits, one by defendants' counsel and one by an Assistant Secretary and General Attorney of ATCOM. Defendants' counsel's affidavit indicated on its face that it was derived solely from hearsay.[3] The affidavit of ATCOM's Assistant Secretary and General Attorney, after describing defendants' business and summarizing the lawsuit, contained the single conclusory assertion: "However, AT & T receives *no* 'federal financial assistance' as that term is defined above. It is *not*, therefore, subject to suit under Section 504." The United States District Court for the Southern District of New York, Gerard L. Goettel, Judge, granted dismissal for lack of jurisdiction despite plaintiff's arguments that the affidavits were inadmissible hearsay and conclusory and that, in any event, since material on the matter was exclusively or largely in defendants' control, plaintiff should be permitted to conduct discovery on the question whether ATCOM received federal financial assistance.

In granting the dismissal the court stated that the 1983 amendment to Rule 11 requires the plaintiff's counsel to have a good faith belief in the allegations made in the complaint and to have made a reasonable inquiry into whether the facts support them. The court declared that nothing in plaintiff's opposing papers indicated that such an inquiry was made and added that "[i]n the absence of any such proof, it is clear that there is no sufficient allegation of a claim of receipt of federal financial assistance as contrasted to possibly federal funds received under contracts." Thus, Rule 11 was used as a springboard to decide the Rule 12(b) motion and then the grant of that motion, from which no appeal was taken, was used subsequently as the basis for the imposition of sanctions.[4] In opposing the imposition of sanctions, counsel for the plaintiff filed an affirmation stating that his client had informed him that ATCOM was organized in several "regions," in one of which she was employed.

---

**3.** The affidavit of Daniel Rizzi, Esq., states in pertinent part that in addition to doing legal research:

> I also contacted various officials of AT & T, informed them as to the definition of "federal financial assistance" applicable to Section 504 actions, and requested that they undertake a review of their financial records and sources of funding to determine whether AT & T receives "federal financial assistance" as that term is defined by the DOJ regulations. I was subsequently advised that AT & T receives no "federal financial assistance" within the meaning of Section 504.

**4.** Plaintiff's Affirmation in Opposition and the district court's oral opinion demonstrated considerable confusion as to whether to treat defendants' motion as a motion to dismiss under Fed.R.Civ.P. 12(b) or as a motion for summary judgment under Fed.R.Civ.P. 56. The district court's decision was in fact a grant of a 12(b)(1) motion to dismiss, but, as we discuss, *infra*, the admissibility of evidence and the propriety of permitting discovery should have been guided by Rule 56(e) and (f).

Another region was called the Government Communications Corporation (GCC). Counsel stated that his client had advised him that GCC was divided into two parts, military and non-military, the former of which was involved in research and development of military communications equipment. She believed that GCC was a recipient not only of federal grants, but also of services of federal personnel, both of which, plaintiff's counsel noted, qualify as federal financial assistance. Counsel maintained that, because GCC and plaintiff's region were jointly managed and interrelated parts of ATCOM, all of ATCOM, or at least plaintiff's region, was arguably subject to the requirements of section 504. The district court found this reasoning "very attenuated." Without receiving any factual information on the matter, or without apparent further investigation, the court asserted, "[m]ilitary development programs are hardly 'federal financial assistance' as that term is commonly understood. If such programs could be so construed, anyone doing business with the federal government (and that includes most corporations of any size) would have to be considered as receiving federal financial assistance." Purporting to follow *Eastway*, the district court then found that "[t]his case clearly falls within the intendment of the revised rule [11]" and awarded defendants approximately two-thirds of the sums requested, namely $4,000 attorneys' fees and $12 costs, noting that "it would seem that such an early and relatively easy termination of an unjustified action could have been obtained, even by motion, at a lesser expense" than that sought by defendants. Interestingly, the affidavit submitted by counsel for defendants seeking attorneys' fees indicated that on July 12, 1985, counsel was spending time doing "additional research regarding issue of whether AT & T receives federal financial assistance and other related issues," three days after demand had already been made on plaintiff's attorney to dismiss Ms. Kamen's suit.

### DISCUSSION

Preliminarily, we note that there is no suggestion that the Rule 11 sanction here was imposed for bad faith conduct. Therefore, we have no need to consider whether Rule 11 authorizes sanctions for subjective bad faith, and we examine only whether plaintiff's counsel met Rule 11's objective standard of reasonable inquiry into the factual and legal soundness of "[e]very pleading, motion, and other paper" signed by the attorney in an action, *see Eastway*, 762 F.2d at 253–54. The sanction was not imposed under 28 U.S.C. § 1927, which authorizes monetary sanctions against any attorney who "multiplies the proceedings in any case unreasonably and vexatiously," a standard held by this court to require a "clear showing of bad faith," *State of West Virginia v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1092 (2d Cir.), *cert. denied*, 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed. 115 (1971), and held elsewhere to require "a finding that an attorney has acted 'recklessly or in bad faith.'" *United States v. Associated Convalescent Enterprises, Inc.*, 766 F.2d 1342, 1346 (9th Cir.1985). Since bad faith is not claimed to be present here, section 1927 could have no application.

■ We also note that the court below and the parties on appeal have treated the signing of the complaint as the occasion for the alleged Rule 11 violation. We approach the case in the same manner and, therefore, express no view on whether sanctions might be imposed under Rule 11 for an attorney's failure to correct a "pleading, motion, or other paper" which, at the time of signing, he reasonably believed to be in compliance, but which, from information acquired at a later date, he could no longer reasonably view as well grounded in fact or law. We point out, however, that to the extent, if any, that Judge Goettel based his decision on ATCOM's later representations that it received no federal financial assistance, plaintiff's counsel's efforts to obtain verification from ATCOM in exchange for a promise to dismiss the action if ATCOM's assertions proved correct cannot be considered objectively unreasonable.

■ Under Rule 12(b), a "speaking" motion, i.e., a motion that includes eviden-

tiary matters outside the pleadings, is properly converted to a Rule 56 motion only when it is made under Rule 12(b)(6): failure to state a claim. However, when, as here, subject matter jurisdiction is challenged under Rule 12(b)(1), evidentiary matter may be presented by affidavit or otherwise. *See Exchange National Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126, 1130–31 (2d Cir.1976). While a 12(b)(1) motion cannot be converted into a Rule 56 motion, Rule 56 is relevant to the jurisdictional challenge in that the body of decisions under Rule 56 offers guidelines in considering evidence submitted outside the pleadings. *Id.* at 1131; *Gordon v. National Youth Work Alliance*, 675 F.2d 356, 360–61 (D.C.Cir.1982). Moreover, in resolving claims that they lack jurisdiction, courts have acted in a fashion suggestive of 56(f): they have required that the party asserting jurisdiction be permitted discovery of facts demonstrating jurisdiction, at least where the facts are peculiarly within the knowledge of the opposing party. *See, e.g., Investment Properties International, Ltd. v. IOS, Ltd.*, 459 F.2d 705, 707–08 (2d Cir.1972); *Williamson v. Tucker*, 645 F.2d 404, 414 (5th Cir.), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981); *Timberlane Lumber Co. v. Bank of America*, 574 F.Supp. 1453, 1461 (N.D.Cal.1983), *aff'd*, 749 F.2d 1378 (9th Cir.1984), *cert. denied*, — U.S. —, 105 S.Ct. 3514, 87 L.Ed.2d 643 (1985). Similarly, courts have required that evidence submitted outside the pleadings be "competent." *See Peay v. Morton*, 571 F.Supp. 108, 110 (M.D.Tenn.1983); *Miller v. Indiana Hospital*, 562 F.Supp. 1259, 1267 n. 11 (W.D.Pa.1983).

█ The affidavit from defendants' attorney submitted in support of the motion for dismissal was entirely insufficient as such since the crucial statement—that AT-COM receives no federal financial assistance—was not based upon personal knowledge. Rule 56(e) specifically requires that affidavits in summary judgment motions be based upon personal knowledge. Attorneys' affidavits not based upon personal knowledge have been held not to comply with Rule 56(e) at least since *Automatic Radio Manufacturing Co. v. Hazeltine Research, Inc.*, 339 U.S. 827, 831, 70 S.Ct. 894, 896, 94 L.Ed. 1312 (1950), a position this court has frequently reiterated, *see, e.g., In re Teltronics Services, Inc.*, 762 F.2d 185, 192 (2d Cir.1985); *Wyler v. United States*, 725 F.2d 156, 160 (2d Cir.1983). The conclusory allegation set forth in the affidavit of the Assistant Secretary and General Attorney is similarly insufficient under Rule 56. *See, e.g., Luckett v. Bethlehem Steel Corp.*, 618 F.2d 1373, 1380 n. 7 (10th Cir.1980); *cf. Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir.1983) (party opposing summary judgment cannot rely on conclusory statement). Furthermore, that affidavit contains no information to indicate a basis in personal knowledge for the affiant's conclusory statement. In accord with principles of fundamental fairness and by analogy to Rule 56(e) and (f), it was improper for the district court, in ruling on the 12(b)(1) motion, to have considered the conclusory and hearsay statements contained in the affidavits submitted by defendants, and to deny plaintiff limited discovery on the jurisdictional question.

The district court apparently believed that the 1983 amendments to Rule 11 amended Rule 56 by implication. Its opinion indicates that a plaintiff opposing a summary judgment motion is no longer entitled under Rule 56(f) to discovery of facts that are, as the judge found they were in this case, "exclusively or largely in the defendant's possession" if the court believes that plaintiff has not complied with Rule 11. We hold, however, that neither Rule 56 nor Rule 12(b) was in any way modified by the adoption of the 1983 amendments to Rule 11, and nothing in the Notes of the Advisory Committee on Rules indicates an intent to make any such modification. Indeed, those Notes emphasize that

> [t]he rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories. The court is expected to avoid using the wisdom of hindsight and should test the

signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted. Thus, what constitutes a reasonable inquiry may depend on such factors as how much time for investigation was available to the signer; *whether he had to rely on a client for information as to the facts* underlying the pleading, motion, or other paper; whether the pleading, motion, or other paper was based on a plausible view of the law; or whether he depended on forwarding counsel or another member of the bar.

(Emphasis added.) Neither the district court nor appellees cite any cases indicating that Rule 11 has modified Rule 56, and our research discloses none.

■ In granting the *motion to dismiss* the district court stated that nothing in plaintiff's papers indicated reasonable inquiry into the facts underlying the complaint. In the *order granting sanctions*, however, the district court found that plaintiff *had* provided her attorney with information related to ATCOM's receipt of federal financial assistance. He simply rejected counsel's arguments on the merits as "very attenuated." Although the district court made no findings as to when plaintiff provided her counsel with this information, there is no basis for the dissent's assertion that *sanctions* were imposed for lack of pre-complaint inquiry. Rather, the action was *dismissed* for failure to make that inquiry, the court reserving the question of sanctions. *Sanctions* were then imposed because the district court rejected the merits of plaintiff's argument, based on the information she had supplied her attorney. The district court made *no* findings in the latter order indicating that there had been no pre-complaint inquiry and quite clearly did not impose sanctions on that basis.

Here we assume that in preparing the complaint counsel did have to rely on his client at least to a certain extent, since whether ATCOM was receiving federal financial assistance as that term is defined in 28 C.F.R. § 41.3(e) (1985) could hardly be known to an outsider, and since the relevant information was largely in the control of the defendants. Under the circumstances the extent of counsel's inquiry and his reliance on the information supplied by his client was "reasonable" within the meaning of Rule 11.

Moreover, since in this case compliance with Rule 11 was determined not by a subjective "good faith" standard but by an objective inquiry into whether "after *reasonable* inquiry, a *competent* attorney could * * * form a *reasonable* belief" that the pleading is well grounded in fact and law, *Eastway*, 762 F.2d at 254 (emphasis added), we note that had plaintiff's or any competent counsel looked to the reported opinion in *United States v. American Telephone & Telegraph Co.*, 552 F.Supp. 131 (D.D.C.1982), *aff'd sub nom. Maryland v. United States*, 460 U.S. 1001, 103 S.Ct. 1240, 75 L.Ed.2d 472 (1983), he would have found sufficient basis to support an allegation that AT & T received federal financial assistance. That opinion contains numerous references to the long-standing, close relationship between, on the one hand, AT & T, its wholly-owned subsidiary Western Electric Company, Inc., and their jointly-owned subsidiary Bell Telephone Laboratories and, on the other hand, the Department of Defense. *See, e.g.*, 552 F.Supp. at 136 & nn. 8, 9 and 10 (in 1952 Defense Department officials, complying with request of AT & T officials, sought indefinite postponement of antitrust action on grounds that key Bell Laboratories and Western Electric executives were having to divert their attention from important national defense projects in order to prepare for trial); *id.* at 137 (Defense Secretary informed Attorney General that AT & T should not be required to divest itself of Western Electric because coordinated organization of AT & T and its subsidiaries was fundamental to successful carrying forward of critical defense projects); *id.* at 152 (court finds AT & T technological development "a vital part of the national economy, national defense, and foreign trade"); *id.* at 167 & n. 152 (company research had beneficial effect on nation's position in respect to scientific advances and

national defense); *id.* at 208–09 (Department of Defense concerns over AT & T divestiture). To be sure, as the district judge below pointed out, a simple Government contract is not necessarily federal financial assistance. Still and all, it is plausible to suppose that in sending up satellites, *see* 552 F.Supp. at 172 n. 173, or putting up microwave towers, *id.,* AT & T has received federal financial assistance in the form of services of federal personnel or the use of Government property in the form of satellite launching facilities and technology or, perhaps, federal lands. *See* 28 C.F.R. § 41.3(e)(2), (3) (1985). In view of the exceedingly close working relationship over the years between the defense establishment and AT & T as indicated in *United States v. American Telephone & Telegraph Co., supra,* one would certainly suppose that from time to time there were arrangements providing services, research, property usage, or other indirect means of financial assistance to AT & T irrespective of payments under any Government contract. One would suppose that an organization so large, *see id.* at 151–52 & n. 85, and so involved with providing the Government's communications services and facilities would almost necessarily receive federal financial assistance, at least on some occasions. We note that it is far from clear, even with agency-provided definitions, *see, e.g.,* 28 C.F.R. § 41.3(e) (1985), precisely what government funds qualify as "Federal financial assistance." *See, e.g., Paralyzed Veterans of America v. CAB,* 752 F.2d 694, 706–16 (D.C.Cir.), *cert. granted,* 106 S.Ct. 244 (1985); *Cook v. Budget Rent-A-Car Corp.,* 502 F.Supp. 494 (S.D.N.Y.1980). Thus, we do not think it unreasonable to argue that certain contracts or grants entered into for research and development, *see* Federal Acquisition Regulations System, 48 C.F.R. pt. 35 (1985), rather than being "procurement contracts," provide "assistance" in such a way as to render an R & D contractor a recipient of "Federal financial assistance." And the tacit admission in appellees' brief that indeed it has done R & D work for the Government does not mean that it has done all its work under procurement contracts, rather than under other types of contracts, grants, or loans. *See* 48 C.F.R. § 35.003 (1985). All this is not to say that AT & T and its subsidiaries are necessarily subject to suit under the Rehabilitation Act, but rather to show that such a claim may be "well grounded in fact and is warranted by existing law" within the meaning of Rule 11, *see Hansen v. Prentice-Hall, Inc.,* 788 F.2d 892, 894 (2d Cir.1986).

Our inquiry into whether Ms. Kamen's suit was so groundless as to be subject to Rule 11 sanctions does not end here. We need also determine whether plaintiff had a nonfrivolous claim that she was within a "program or activity" receiving federal financial assistance. Section 504 contains the same program-specific requirement as section 901(a) of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) (1982). In *Grove City College v. Bell,* 465 U.S. 555, 104 S.Ct. 1211, 79 L.Ed.2d 516 (1984), the Court held that federal financial assistance did not subject the entire college to regulation under Title IX, but rather only the program or activity receiving assistance. *See id.* at 570–74, 104 S.Ct. 1220–22. In a separate opinion that day the Court indicated that such program-specific analysis should also be applied to section 504. *See Consolidated Rail Corp. v. Darrone,* 465 U.S. 624, 636, 104 S.Ct. 1248, 1255, 79 L.Ed.2d 568 (1984). However, it is often a difficult question to define which program or activity is receiving assistance. *See id.; Paralyzed Veterans of America,* 752 F.2d at 714–15 (deciding that relevant "program or activity" is the providing of commercial air transportation, not only airport operations, thus subjecting airlines as well as airports to section 504 by virtue of federal aid to airports), *cert. granted,* —— U.S. ——, 106 S.Ct. 244, 88 L.Ed.2d 253 (1985). As this court has stated, "[T]he issue of program-specificity [under section 504] cannot be properly analyzed in the abstract, but instead requires a concrete set of facts." *United States v. University Hospital,* 729 F.2d 144, 151 (2d Cir.1984). Because there is no clear standard on the

nexus between "Federal financial assistance" and "program or activity," Rule 11 sanctions on this basis would have been wholly improper.

In sum, this case is an inappropriate one for sanctions. The district court found that plaintiff had provided information to counsel; plaintiff's counsel had sought relevant information within the defendants' control, which they declined to provide; the law on "Federal financial assistance" and "program or activity" is quite unsettled; and the plaintiff is very likely a "handicapped individual" under section 504, *see Vickers, supra.* Moreover, just as summary judgment or a 12(b) motion cannot be boot-strapped onto a finding of a Rule 11 violation, an improper grant of dismissal cannot be the basis for Rule 11 sanctions. We reiterate our position in *Eastway,* 762 F.2d at 254, that, in imposing Rule 11 sanctions, "we do not intend to stifle the enthusiasm or chill the creativity that is the very lifeblood of the law."

For the reasons above stated, the judgment imposing sanctions is reversed.

KEARSE, Circuit Judge, dissenting:

I must respectfully dissent from the majority's decision reversing the district court's order imposing sanctions pursuant to Fed.R.Civ.P. 11. Assuming that the district court intended to impose the sanctions against plaintiff's attorney, who signed the complaint, and not against plaintiff herself, and that the order would be clarified in that respect, it appears to me that the order was not improper.

While I agree with the majority that Rule 11 did not alter the requirements of Fed.R.Civ.P. 56, I also note that the merits of the dismissal of the complaint are not directly before us, no timely appeal having been taken from that dismissal. In any event, whether or not there may have been good ground for the complaint, the district court also found sanctions applicable on the ground that the pre-complaint inquiry required by Rule 11 had not been made. I consider the factual premise for this ground unimpeachable on the record that

was before the district court, and I read *Eastway Construction Corp. v. City of New York,* 762 F.2d 243 (2d Cir.1985), as requiring the imposition of sanctions in any case in which such a violation of Rule 11 is found.

Rule 11 provides that

[t]he signature of an attorney ... constitutes a certificate by him that ... *to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact* and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law....

Fed.R.Civ.P. 11 (emphasis added). In its August 2, 1985 decision dismissing the complaint in this action, the district court had stated that there was no indication that plaintiff's counsel had made any pre-complaint investigation as required by Rule 11. In its September 23, 1985 order imposing sanctions, after quoting the portion of Rule 11 italicized above, and the further provision for the imposition of sanctions for violation of the Rule, the court found that the present case constituted such a violation, stating that, under the current version of Rule 11, it is no longer permissible "for plaintiff's counsel to commence suit first and to seek evidence supporting the plaintiff's claims later." Thus, I read the district court's sanction order as finding that the complaint was not signed after a reasonable inquiry. This finding was not clearly erroneous.

The only suggestion advanced by plaintiff's attorney that he had made any investigation whatever into the jurisdictional basis for the complaint filed in June 1985 was his description in his September 17, 1985 affirmation of what plaintiff had told him as to the organization of AT & T and the possibility of the receipt by certain divisions of federal funds and the services of federal personnel. There apparently was no other investigation. Bypassing the question of whether this information sufficed under Rule 11 (in light of (1) the then-recent Supreme Court rulings in *Grove City College v. Bell,* 465 U.S. 555,

104 S.Ct. 1211, 79 L.Ed.2d 516 (1984), and *Consolidated Rail Corp. v. Darrone*, 465 U.S. 624, 104 S.Ct. 1248, 79 L.Ed.2d 568 (1984) (receipt of federal financial assistance does not make § 504 of the Rehabilitation Act applicable to entire business entity but only to the specific program or activity receiving such assistance), and (2) the fact that even the information given by plaintiff did not suggest that any of the AT & T divisions she thought received federal assistance were divisions that employed plaintiff), the inference is strong—both from the belatedness of counsel's statements and from his silence as to the timing of his receipt of the information—that even this information was not obtained by counsel prior to filing the complaint.

There were three obvious occasions early in the lawsuit when one would have expected counsel to mention his client's information, if he had previously been given the information. First, immediately after the complaint was filed, when defendants' attorney informally told plaintiff's counsel that AT & T received no federal financial assistance; second, when defendants moved to dismiss on the ground that AT & T received no federal financial assistance; and third, when the court dismissed the complaint on that ground and a motion for reconsideration could have been made. At all of these stages, counsel was silent as to the fact that plaintiff had identified certain divisions of AT & T that she thought received federal funds and the services of federal personnel. One would normally expect counsel to come forth with this information at each of these junctures; yet he came forward with it at none of them. His complete silence—until it was too late to save the complaint—as to any basis for suggesting that AT & T had received federal assistance easily supported the district court's inference that counsel did not have that information at the time he opposed the motion to dismiss the complaint, and perforce did not have it prior to filing the complaint.

I am unpersuaded by the majority's view that plaintiff's opposition to defendants' motion to dismiss on the ground that defendants' affidavits were hearsay or conclusory somehow validates counsel's evident failure to have made a pre-complaint inquiry. Rather I think counsel's election to rely on the argument that the AT & T official's affidavit was conclusory is one of the factors that suggests that counsel had not obtained any information with which to controvert the conclusory statement. The argument that summary judgment should not be granted because the statement in question—that AT & T had not received federal financial assistance—was conclusory was not a particularly good one. Whether made by affidavit or by live testimony (*see* 6 *Moore's Federal Practice* ¶ 56.22[1], at 56–1321 to 56–1324 (2d ed. 1985) (Rule 56(e) affidavit may contain any evidentiary matter to which the affiant would be permitted to testify at trial)), statements that a given event has *not* occurred are normally conclusory.[1] If the

---

1. Note that different treatments are appropriate for different types of conclusory statements, *e.g.,* (A) conclusory statements combining fact and law, (B) conclusory statements that an event has not occurred, and (C) conclusory statements that an event that has occurred was not motivated by a particular factor. Conclusory statements in category A are usually impermissible even at trial. *See* 6 *Moore's Federal Practice* ¶ 56.22[1], at 56–1312 to 56–1318. Statements in category C, though admissible at trial, are rarely sufficient on a motion for summary judgment, since where state of mind is at issue, summary judgment is rarely appropriate. *See, e.g., Poller v. CBS*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962).

Conclusory statements in category B, however, are neither inadmissible nor improper in form, since it is normally impossible to state all of the facts that show that an event did not occur. *See, e.g., Dyer v. MacDougal*, 201 F.2d 265, 266 (2d Cir.1952) (summary judgment upheld on basis of defendants' affidavits "unequivocally den[ying] the utterance of the [alleged] slanders"); *cf. 2A Moore's Federal Practice* ¶ 9.04, at 9–44 n. 9 (2d ed. 1985) (although Fed.R.Civ.P. 9(c) requires a defendant to deny the performance or occurrence of a condition precedent specifically and with particularity, "A denial could be in this form: Defendant denies that the plaintiff rendered proofs of loss to the defendant pursuant to the terms of the policy, or at all.") Cross-examination, obviously, is available to explore the basis of conclusory statements made at trial; discovery may be requested to explore the basis of such statements

opposing party has some basis for believing that the event has occurred, it is to be expected that it will disclose that basis in opposition to the motion to dismiss its pleading, if only to support a Rule 56(f) request for discovery. But in plaintiff's July 29, 1985 opposition to defendants' motion here, although discovery was requested, counsel did not mention that his client had told him of her belief that various identified AT & T divisions received federal grants and the services of federal personnel. That information, though it plainly would have been relevant to support the request for discovery, was forthcoming only a month after the complaint had been dismissed, when counsel was responding to the motion for sanctions.

Finally, nothing in counsel's affirmation in opposition to the motion for sanctions contradicts the inference that counsel had conducted no investigation prior to filing the complaint. Although it is in that affirmation that counsel describes the information given to him by plaintiff, and the affirmation appears to be carefully crafted to give the impression that counsel had received the information prior to filing the complaint, counsel simply does not state when it was given to him. He never states that the information was given to him prior to the filing of the complaint; he never states that he relied on it in formulating the complaint; he does not list possession of that information as one of the factors that led him, immediately after filing the complaint, to refuse to credit defendants' attorney's informal representations that AT & T did not receive federal financial assistance. The district court, in its August 2, 1985 decision dismissing the complaint, had stated that there was no indication that any pre-complaint inquiry had been made; one would think, therefore, that in responding to the Rule 11 motion for sanctions, counsel surely would have stated clearly that he obtained plaintiff's information prior to filing the complaint if that were true. There is, however, nothing

made in an affidavit. And, of course, the statement that the event did not occur may be disputed, creating an issue of fact to be tried. The

in counsel's affirmation to show that he did not receive the information from plaintiff until just before drafting the affirmation.

In *Eastway Construction Corp. v. City of New York,* we reversed a decision of the district court which denied sanctions, stating that "where strictures of the rule have been transgressed, it is incumbent upon the district court to fashion proper sanctions." 762 F.2d at 254 n. 7. I do not understand how, in light of *Eastway,* we can reverse the district court for awarding sanctions in this case.

form and content of a conclusory statement that an event did not occur, however, are not impermissible.