[No. G001645. Fourth Dist., Div. Three. Mar. 31, 1986.]

LINDBORG-DAHL INVESTORS, INC., Plaintiff and Respondent, v. CITY OF GARDEN GROVE et al., Defendants and Appellants.

**COUNSEL**

Eric Lauterer, City Attorney, Stradling, Yocca, Carlson & Rauth, Paul L. Gale and Donald J. Hamman for Defendants and Appellants.

Robert F. Waldron, Inc. and Patrick Hennessey for Plaintiff and Respondent.

## OPINION

**SONENSHINE, J.**—The City of Garden Grove appeals a judgment granting a writ of mandate in favor of Lindborg-Dahl Investors, Inc. (Investors). The writ compels the city to approve Investors' housing development site plan application for the construction of 14 single family homes. The city council previously denied the application. The city contends the administrative record contains substantial evidence supporting its decision. We agree and reverse.

### FACTS AND PROCEDURAL BACKGROUND

In May and June, 1983, Investors submitted a proposed site plan and floor plans to the city planning commission staff for review. Investors revised their plans after meeting with the planning staff and surrounding neighbors. In August they submitted the revisions to the city planning commission for approval. On October 13th, the city planning commission conducted a public hearing on the application. After discussions among the staff and questions and comments from the public, the commission approved the plan. ■■ ■■■■ A local resident filed a timely appeal.[1]

On December 5th, the city council held a public hearing as required by section 9219.14. The members discussed the plan and heard testimony from Investors' representatives and several residents of the neighborhood. ■■ ■■■■ At the hearing the council voted unanimously to deny the site plan, and on February 27, 1984,[2] adopted a resolution to that effect.[3]

---

[1] Investors make much of the fact the application had been approved by the planning commission. However, that decision was properly appealed to the city council within seven days as provided in Garden Grove Municipal Code section 9219.12. The council was not bound by the planning commission's decision; indeed, the appellate process would otherwise be meaningless.

All further statutory references are to the Garden Grove Municipal Code unless otherwise indicated.

[2] Investors point out the council failed to announce its decision by formal resolution within 30 days following termination of the hearing, as required by section 9219.16.

The court in *Anderson* v. *Pittenger* (1961) 197 Cal.App.2d 188 [17 Cal.Rptr. 54], examined a similar municipal statute. It noted such statutes are "'directory'" unless the nature or language of the act "'makes it clear that the time fixed is by way of limitation.'" (*Id.*, at p. 194, quoting *Buswell* v. *Board of Supervisors of Alameda County* (1897) 116 Cal. 351, 354 [48 P. 226].) The court found the provision for time of announcement to be directory, and the city's tardy resolution therefore valid. (*Ibid.*) We find despite its tardiness the resolution in this case is valid.

[3] The city council's Resolution No. 6465-84 gave the following facts and reasons to support its decision:

"*Facts*

"1. The subject site has been used as a utility easement by Southern California Edison Company since before the City of Garden Grove was incorporated.

On March 1, 1984, Investors filed a petition for writ of mandate; a hearing was held May 3d. After taking the matter under submission the court, on May 10th, granted the petition. On May 18th, the city filed a request for statement of decision and reconsideration of the court's ruling; it was denied on June 28th.[4] A judgment granting a writ was filed on July 30th,[5] and the writ issued on August 7th.

"2. There are existing 64,000 volt power lines and power poles running the length of the site which must remain accessible for maintenance and which cannot be built under.

"3. The site is irregularly shaped, being 120 feet wide by approximately 1,700 feet long.

"4. The General Plan designation for the site is Open Space.

"5. The subject property is zoned R-1 (One Family Residential) which would allow a density of six units per acre.

"6. The site is situated between existing single family residential uses.

"7. The neighborhood surrounding the subject site has experienced flooding problems.

"8. The proposed site plan would construct 14 single family dwelling units on the site along with a street, guest parking and landscape area. The homes would not have direct access to a public street but rather via a private street.

"9. Considerable testimony was received from local residents during public hearings regarding this case who recommended denial because of the following concerns with the proposed project.

"a. Incompatibility with surrounding neighborhood.

"b. Worsening of the storm drainage in area.

"c. Increased traffic through neighborhood.

"d. Security of existing homes created when access is allowed along the length of the easement.

"e. Creation of "electric[al] smog" by high-power electric lines.

"f. Density is too high for site configuration.

"g. Location of a private street in close proximity to existing rear yards. Also that the private street should be considered and built as a public street.

"10. Testimony was received from the applicant regarding the case. He indicated that he changed his site plan, reducing the density of the project and complying with all City codes. He indicated he felt the issues of the appeal (increased traffic, increased flooding, and safety from power poles and lines) were not justified and that the project was compatible with surrounding land uses.

"*Reasons*

"1. The site configuration poses several problems for development which make the project undesir[able], including circulation, inability to use all of [the] land due to power lines, etc.

"2. The length of the private street is too long and is not adequate in size to meet the needs of the development.

"3. The neighborhood has flooding problems which may be aggravated by the proposed development.

"4. The project does not present a reasonable degree of physical, functional, or visual compatibility between the proposed use and the neighboring uses."

[4]Neither party requested a statement of decision before the matter was submitted. Code of Civil Procedure section 632 requires such a request "if the trial has lasted less than one day . . . ," as was the case here.

[5]The trial court considered the transcript of the hearing and exhibits received in evidence and found "respondent City Council of Garden Grove abused its discretion in that its findings concerning petitioner's site plan No. SP. 131-83 are not supported by the evidence and that there is no substantial evidence in the record to support the findings relied on by respondent City Council of Garden Grove to deny petitioner's site plan No. SP. 131-83."

We find no merit in the city's claim the trial court's hearing was inadequate.

On appeal, the city contends it acted within its discretion in denying Investors' site plan application. It claims the administrative record contains substantial evidence to support its findings and its findings support its decision. Investors contend, and the trial court found, the council abused its discretion in denying the application. They claim the council's findings are not supported by substantial evidence and therefore do not support denial of the application.

### Standard of Review

■■ ■■■■ ■ ■ The trial court, in considering the merits of Investors' petition, was required to determine whether the city council's decision was supported by substantial evidence. (Code Civ. Proc., § 1094.5, subd. (c); *Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 149, fn. 22 [93 Cal.Rptr. 234, 481 P.2d 242]; *Steve P. Rados, Inc.* v. *California Occupational Saf. & Health Appeals Bd.* (1979) 89 Cal.App.3d 590, 594 [152 Cal.Rptr. 510].)[6] The function of this court on appeal is the same as that of the trial court. (*Bixby* v. *Pierno, supra,* at p. 149; *Steve P. Rados, Inc., supra,* at p. 595.)

■ Code of Civil Procedure section 1094.5 is "the state's administrative mandamus provision which structures the procedure for judicial review of adjudicatory decisions rendered by administrative agencies . . . . [A]t minimum, the reviewing court must determine both whether substantial evidence supports the administrative agency's findings and whether the findings support the agency's decision." (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506, 514-515 [113 Cal.Rptr. 836, 522 P.2d 12].) We therefore consider the entire record to determine whether substantial evidence supports the city council's findings and whether those findings support its decision.[7]

---

[6]The reviewing court does not make a de novo determination. However, where the decision of a local administrative agency affects a fundamental vested right, a court reviewing the agency's decision must exercise its independent judgment in reviewing the evidence. In such a case, the court must find abuse of discretion if the weight of the evidence fails to support the decision. (*Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 34 [112 Cal.Rptr. 805, 520 P.2d 29].) The present case does not involve any fundamental vested right.

[7]We may not isolate only the evidence supporting the city council's findings but must consider all relevant evidence in the record. (*Le Vesque* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627, 638-639, fn. 22 [83 Cal.Rptr. 208, 463 P.2d 432].) In making this determination, we must "resolve reasonable doubts in favor of the administrative findings and decision." (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles, supra,* 11 Cal.3d 506, 514.) Moreover, "[c]ourts may reverse an agency's decision only if, *based on the evidence before the agency,* a reasonable person could not reach the conclusion reached by the agency." (*McMillan* v. *American Gen. Fin. Corp.* (1976) 60 Cal.App.3d 175, 186 [131 Cal.Rptr. 462], italics in original.)

SUBSTANTIAL EVIDENCE SUPPORTS THE CITY COUNCIL'S FINDINGS
AND THE FINDINGS SUPPORT ITS DECISION

 Section 9219.7[8] permits the council discretion in reviewing site plan applications and sets forth the criteria governing their review. In weighing these criteria, the city council properly relied on evidence generated by public testimony. (*Wesley Investment Co.* v. *County of Alameda* (1984) 151 Cal.App.3d 672, 679 [198 Cal.Rptr. 872].) This testimony indicated various problems posed by the development, including violations of several municipal code sections, increased flooding in the area, increased traffic, security problems and health and safety risks created by public access to high voltage power lines located on the site. The specifications of the site plan and the public testimony received by the city council constitute substantial evidence supporting the council's decision.

 After reaching a decision, the city council was required to "render findings sufficient both to enable the parties to determine whether and on what basis they should seek review and, in the event of review, to apprise a reviewing court of the basis for the board's action." (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles, supra,* 11 Cal.3d 506, 514.)

---

[8]Section 9219.7 provides ". . . in the review of site plans, the Planning Agency shall be governed by the following criteria:

"(a) That the spirit and intent of the provisions, conditions and requirements of this Chapter and other applicable ordinances are. complied with. Minor modification to such standards shall be permitted to encourage the most productive use of the land, provided the Planning Agency determines that such modifications will result in a development plan that is superior to that which could be obtained by the rigid application of the detailed provisions, conditions and requirements of this Chapter.

"(b) That the proposed development is properly related to essential on-site facilities such as off-street parking, loading and unloading areas, traffic circulation and points of vehicular and pedestrian access.

"(c) That the proposed development is properly related to essential public facilities such as streets and alleys, utilities and drainage channels.

"(d) That the proposed development is properly related to the requirements of and opportunities for the services performed by public agencies and particularly emergency public safety services.

"(e) That a reasonable degree of physical, functional and visual compatibility between the proposed project and neighboring uses and desirable neighborhood characteristics is assured.

"(f) That through the planning and design of buildings and building placement, the provision of open space and other site facilities will attain an attractive environment for the occupants of the property.

"(g) In no case shall the Planning Agency deny a site plan on the basis of the proposed use of the land unless that use is not clearly permitted by the zone that has been placed on the subject land."

Such findings serve to "bridge the analytic gap between the raw evidence and ultimate decision or order." (*Id.*, at p. 515.)[9]

■ We reject Investors' argument the council's written findings fail to articulate the factors on which it based its decision and therefore are inadequate under *Topanga*. Written findings are not the sole means by which *Topanga's* requirements may be satisfied. ■ "While *Topanga* seeks to avoid requiring a reviewing court to conduct a search through the record for some combination of evidence which supports the decision of the agency, it does not preclude a reviewing court from looking to the record to determine the findings upon which the decision is based." (*City of Carmel-by-the-Sea* v. *Board of Supervisors, supra,* 71 Cal.App.3d 84, 91.)

■ The council's resolution states: "The length of the private street is too long and is not adequate in size to meet the needs of the development." Evidence indicated the street's dimensions would be approximately 30 feet by 1093 feet. The Municipal Code prescribes a minimum street width of 50 feet and a maximum length of 990 feet. Investors' proposed street thus violated two municipal code sections. And even if, as Investors contend, the street conforms to the city's requirements for a *private* street, the plan would violate the Municipal Code requirement of frontage on a public street. In either case, the violation provided sufficient justification to deny the site plan application.[10]

The resolution also provides: "The neighborhood has flooding problems which may be aggravated by the proposed development." The planning commission staff report and public testimony indicated there are drainage problems in the area. Storm water run-off from the site causes flooding which is a nuisance. In fact, Investors agreed the proposed development would reduce the ground available for seepage and increase water run-off and flooding in the area.

A third reason given by the council is: "The site configuration poses several problems for development which make the project undesirable, in-

[9]In addition to the findings stated in the council's resolution, we look to the transcript of the hearing for statements made by the council members. It is proper to look for findings in oral remarks made at a public hearing at which both parties were present, which was recorded and of which a written transcript could be made. (*City of Carmel-by-the-Sea* v. *Board of Supervisors* (1977) 71 Cal.App.3d 84, 92 [139 Cal.Rptr. 214].) Presumably, this is because the information is available to all the parties.

[10]Another problem with the proposed development is its street would run along the back of existing lots, with a minimum of seven feet of landscaping between the street and the neighboring yards. While technically this is acceptable, the city argues it would in fact create "double frontage lots," or lots bordered by streets with front and back, which are prohibited by the Municipal Code.

cluding circulation, inability to use all of land due to power lines, etc."
Increased traffic circulation was a concern expressed at the hearing. There
was testimony the street would be used by the public at large during rush
hour and to gain access to a market, gas station and other developments in
the neighborhood. Health and safety concerns were also raised because the
plan is such that, upon development, high voltage power lines and poles
will jut into the street and become accessible to the public.[11]

The reasons given by the council are within the degree of discretion per-
mitted by section 9219.7. None of the criteria for site plan review set forth
in that section were met, i.e., compliance with the spirit and intent of ap-
plicable Municipal Code sections (subd. (a)), traffic circulation and vehicle
access (subd. (b)), and relation to streets, utilities and drainage channels
(subd. (c)).

Thus, substantial evidence supports the council's findings and the findings
support its decision. We therefore conclude the trial court erred in granting
Investors' petition.

The judgment is reversed with directions to vacate the order granting the
petition and enter a new order denying said petition, and to quash the writ.
Appellants are entitled to costs on appeal.

Trotter, P. J., and Crosby, J., concurred.

Respondent's petition for review by the Supreme Court was denied
June 18, 1986.

---

[11]The council stated a fourth reason for denial as: "The project does not present a rea-
sonable degree of physical, functional, or visual compatibility between the proposed use and
the neighboring uses." This reason is a restatement of the statutory language in section
9219.7(e). Administrative findings which merely recite statutory language have been con-
sidered insufficient as a matter of law. (City of Carmel-by-the-Sea, supra, 71 Cal.App.3d
84, 92.) We therefore do not look to this reason to support the council's decision.