[No. F012316. Fifth Dist. Jan. 23, 1991.]

COUNTY OF FRESNO, Plaintiff and Respondent, v.
FAIR EMPLOYMENT AND HOUSING COMMISSION, Defendant
and Appellant;
DANYSE BROOKS et al., Real Parties in Interest and Respondents.

**[Opinion certified for partial publication.\*]**

---

\* Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication
with the exception of parts III, IV and V.

1544

COUNSEL

John K. Van de Kamp, Attorney General, Andrea Sheridan Ordin, Chief Assistant Attorney General, Marian M. Johnston and Kathleen W. Mikkelson, Deputy Attorneys General, for Defendant and Appellant.

Max E. Robinson, County Counsel, and J. Wesley Merritt, Chief Deputy County Counsel, for Plaintiff and Respondent.

No appearance for Real Parties in Interest and Respondents.

OPINION

STONE (W. A.), Acting P. J.—The issue before us is whether the California Fair Employment and Housing Commission abused its discretion in finding the County of Fresno failed to reasonably accommodate the

physical handicaps of two employees in violation of Government Code section 12940, subdivision (a).

## THE FACTS AND PROCEEDINGS

On behalf of Danyse Brooks (Brooks) and Camille Capo (Capo) the California Department of Fair Employment and Housing (Department) issued accusations charging Fresno County (County) with discrimination on the basis of physical handicap. The accusations alleged the County forced Brooks and Capo to work in inadequately ventilated rooms filled with cigarette smoke despite the County's knowledge they suffered from severe respiratory problems and despite requests for reasonable accommodation.

Based upon the testimony of several doctors, County supervisory and management personnel, Brooks and Capo and other county employees, the Fair Employment and Housing Commission (Commission) made specific factual findings. From those findings the Commission concluded Brooks and Capo were physically handicapped within the meaning of the Fair Employment and Housing Act (the Act) and the County could have accommodated their handicaps as requested without undue hardship. The Commission determined the failure to implement reasonable accommodation measures requested by Brooks and Capo constituted discrimination in violation of Government Code section 12940, subdivision (a).

The Commission ordered the following relief: (1) $325 in out-of-pocket expenses to cover a portion of Capo's medical costs; (2) backpay to Brooks to cover a period of time during which she was forced to take an unpaid leave of absence; (3) reinstatement of sick leave credits for all sick leave used by Brooks as a result of smoke-related illness; (4) $30,000 in compensatory damages to Capo and $40,000 in compensatory damages to Brooks to compensate for emotional injury resulting from County's conduct; and (5) the posting of notices to inform County employees and prospective County employees of the outcome of the discrimination charges filed by Brooks and Capo against the County.

The County filed a petition for administrative mandamus seeking to set aside the decision and order of the Commission. The petition alleged substantial evidence in the record did not support the Commission's findings that (1) Brooks and Capo were physically handicapped, (2) the County had not provided reasonable accommodation, and (3) compensatory damages were warranted. The petition also alleged (4) the Commission had proceeded in excess of its jurisdiction and abused its discretion in continuing the

hearing beyond 90 days after issuance of the accusations and in issuing the decision beyond 30 days after the hearing, (5) alleged delays by the Department and the Commission gave rise to a laches defense, and (6) the Commission had no authority to award compensatory damages.

The superior court issued a peremptory writ of mandate ordering the Commission to set aside its decision and to rescind its orders. The court found the Commission had not abused its discretion or acted in excess of its jurisdiction in granting a continuance of 90 days beyond the issuance of the accusations or in issuing its decision 30 days beyond submission. It also found delays had not given rise to laches because the County had failed to show prejudice. The court found substantial evidence in the record supported the finding that Brooks and Capo were physically handicapped, but concluded the finding that their handicaps had not been reasonably accommodated was not supported by the record.[1] Finally, it determined the Commission had no authority to award compensatory damages.

## DISCUSSION

The Commission contends substantial evidence in the record compelled a superior court finding that the County failed to provide reasonable accommodation to Brooks and Capo and that the County failed to demonstrate undue hardship. It contends further that its remedial authority includes the power to award compensatory damages for pain and suffering. In response, the County contends the evidence compels a finding that it made reasonable efforts to accommodate Brooks and Capo and that any further accommodation would have imposed an undue hardship on its operations. It asserts the Commission does not have power to award compensatory damages.

The County asserts further that, although it has not filed a cross-appeal from the judgment of the superior court, it can nevertheless raise errors by the Commission which, although resolved against the County by the superior court, if properly resolved in its favor would require this court to affirm the issuance of the peremptory writ regardless of how this court resolves the issues raised by the Commission. Those claims are (1) the Commission abused its discretion in finding Brooks and Capo were physically handicapped; (2) workers' compensation provides the exclusive remedy for compensatory damages for pain and suffering; (3) the Commission proceeded in excess of its jurisdiction or abused its discretion because it continued the hearings more than 90 days after the issuance of the accusations and the

---

[1] The trial court found the County made "good faith and reasonable efforts to accommodate Brooks and Capo which were designed and effectuated by the County during a period of national evolution in attitude relative to non-smokers' rights in social and work places."

administrative law judge did not issue her proposed decision within 30 days of submission; and (4) delays by the Department give rise to a laches defense.

The County relies upon Code of Civil Procedure sections 475 and 906.

Code of Civil Procedure section 475 provides:

"The court must, in every stage of an action, disregard any error, improper ruling, instruction, or defect, in the pleadings or proceedings which, in the opinion of said court, does not affect the substantial rights of the parties. No judgment, decision, or decree shall be reversed or affected by reason of any error, ruling, instruction, or defect, unless it shall appear from the record that such error, ruling, instruction, or defect was prejudicial, and also that by reason of such error, ruling, instruction, or defect, the said party complaining or appealing sustained and suffered substantial injury, and that a different result would have been probable if such error, ruling, instruction, or defect had not occurred or existed. There shall be no presumption that error is prejudicial, or that injury was done if error is shown."

Code of Civil Procedure section 906 provides:

"Upon an appeal pursuant to Section 904.1 or 904.2, the reviewing court may review the verdict or decision and any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from or which substantially affects the rights of a party, including, on any appeal from the judgment, any order on motion for a new trial, and may affirm, reverse or modify any judgment or order appealed from and may direct the proper judgment or order to be entered, and may, if necessary or proper, direct a new trial or further proceedings to be had. *The respondent, or party in whose favor the judgment was given, may, without appealing from such judgment, request the reviewing court to and it may review any of the foregoing matters for the purpose of determining whether or not the appellant was prejudiced by the error or errors upon which he relies for reversal or modification of the judgment from which the appeal is taken.* The provisions of this section do not authorize the reviewing court to review any decision or order from which an appeal might have been taken." (Italics added.)

■ Even assuming we can address the issues raised by respondent, they are without merit, as we shall discuss.

In reviewing the validity of the Commission's decision, Code of Civil Procedure section 1094.5 requires, in relevant part, that this court inquire into whether the Commission acted in excess of its jurisdiction and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the Commission failed to proceed in the manner required by law or its finding of discrimination is not supported by substantial evidence in light of the whole record. (Code Civ. Proc., § 1094.5, subds. (b), (c); *Raytheon Co. v. Fair Employment & Housing Com.* (1989) 212 Cal.App.3d 1242, 1250 [261 Cal.Rptr. 197].)

When reviewing for substantial evidence, all reasonable doubts must be resolved in favor of the Commission's findings. (*Topanga Assn. for a Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506, 514 [113 Cal.Rptr. 836, 522 P.2d 12].) The court may reverse the Commission only upon determining a reasonable person could not reach the conclusion reached by the Commission. (*Lindborg-Dahl Investors, Inc. v. City of Garden Grove* (1986) 179 Cal.App.3d 956, 961, fn. 7 [225 Cal.Rptr. 154]; *McMillan v. American Gen. Fin. Corp.* (1976) 60 Cal.App.3d 175, 186 [131 Cal.Rptr. 462].)

While the Commission's findings of fact will be sustained if supported by substantial evidence on the record considered as a whole, neither the trial court nor this court is bound by the Commission's legal conclusions. (*Johnson Controls, Inc. v. Fair Employment & Housing Com.* (1990) 218 Cal.App.3d 517, 532 [267 Cal.Rptr. 158].)

PART I

PHYSICAL HANDICAP

 The County contends the Commission abused its discretion in finding that Brooks and Capo were physically handicapped. The County claims hypersensitivity to smoke is either (1) a "non-handicapping respiratory disorder," not encompassed by the Act's definition of physical handicap, or (2) an "environmental limitation" rather than a physical or mental limitation. The County does not dispute the facts relied upon by the Commission in concluding that Brooks's and Capo's respiratory ailments are physically handicapping. It challenges the Commission's interpretation of the definition of physical handicap as found in applicable statutes and regulations.[2] Although the Commission's interpretation of the Act which

---

[2] Despite the County's claim to the contrary, federal case law establishes that hypersensitivity to tobacco smoke is a physical handicap under the Rehabilitation Act of 1973 (Rehabilitation Act). (*Vickers v. Veterans Administration* (W.D.Wash. 1982) 549 F.Supp. 85, 86-87;

it enforces is not binding upon this court, it is entitled to great weight. (*Fisher* v. *Superior Court* (1986) 177 Cal.App.3d 779, 783 [223 Cal.Rptr. 203].)

Government Code section 12926, subdivision (h) provides:

" 'Physical handicap' includes impairment of sight, hearing, or speech, or impairment of physical ability because of amputation or *loss of function* or coordination, or any other health impairment which requires special education or related services." (Italics added.)

In *American National Ins. Co.* v. *Fair Employment & Housing Com.* (1982) 32 Cal.3d 603 [186 Cal.Rptr. 345, 651 P.2d 1151], the court liberally construed the foregoing definition to include any physical impairment which is disabling in that it makes achievement unusually difficult. (32 Cal.3d at p. 609.) The court used this construction of the term to conclude that in certain cases high blood pressure may be a physical handicap under the Act.

Section 7293.6 of the Commission's regulations defines the term "physical handicap" more specifically to include "[i]mpairment of physical ability because of . . . [l]oss of function . . . ." "Impairment of physical ability due to loss of function" is defined as "[a]ny physiological disorder or condition . . ." affecting, inter alia, the respiratory system. A handicapped individual is identified as someone who has "a physical handicap which substantially limits one or more major life activities; . . ." The definition of "major life activities" includes breathing. (Cal. Code Regs., tit. 2, § 7293.6, subds. (a)-(f).)

The Commission relied upon the expert testimony of Dr. Stulbarg which established Brooks and Capo suffered from asthma and Capo suffered from sarcoidosis of the lungs, both physiological disorders affecting the respiratory system. According to the doctor's testimony, because of their respiratory disorders they were hypersensitive to tobacco smoke and exposure to it severely impaired their normal breathing.

County relies upon dicta in *American National Ins. Co.* v. *Fair Employment & Housing Com., supra*, 32 Cal.3d at page 608, which recognizes that some "ills or defects" such as respiratory, digestive or skin disorders are not handicapping. This does not mean that respiratory disorders as a category are not covered by the Act. It merely means that some physiological disor-

---

*United States* v. *Bell* (D.Minn. 1989) 716 F.Supp. 1207; *Tudyman* v. *United Airlines* (C.D.Cal. 1984) 608 F.Supp. 739; *de la Torres* v. *Bolger* (5th Cir. 1986) 781 F.2d 1134.)

ders or conditions are not disabling. In the case of Brooks and Capo, evidence demonstrated that because of a respiratory disorder, exposure to tobacco smoke substantially limited their ability to breathe.

The County's contention that hypersensitivity to smoke is merely an "environmental limitation" and not a physical handicap is equally unmeritorious. Tobacco smoke in the environment may simply be an environmental limitation to those who do not suffer from severe respiratory disorders. To most people tobacco smoke is merely irritating, distasteful or discomforting. Someone who suffers from a respiratory disorder and whose ability to breathe is severely limited by tobacco smoke is, nevertheless, physically handicapped within the meaning of the Act.

The Commission did not abuse its discretion in finding Brooks and Capo to be physically handicapped.

## PART II

### REASONABLE ACCOMMODATION

The Act requires an employer to make reasonable accommodation to the physical handicap of any handicapped individual if the employer knows of the physical handicap, unless the employer can demonstrate the accommodation would produce an undue hardship to the employer. (Gov. Code, § 12994; Cal. Code Regs., tit. 2, § 7293.9.)

 The County argues the duty to make reasonable accommodation means it was required to make reasonable efforts to accommodate. It contends management and other employees took the following measures to attempt to shield Brooks and Capo from smoke:

1. Smokers used desktop air filtration machines.

2. Employees kept windows open.

3. Management separated the desks of Brooks and Capo from the desks of smokers.

4. Smokers refrained from smoking in the immediate presence of Capo and Brooks, and ceased walking in open office areas with lighted cigarettes.

5. Management moved Capo and Brooks to a wholly enclosed private office in June 1982 and vented the door to the office to improve ventilation.

6. Management offered Brooks an alternative job position in the Valley Medical Center trailers in December 1982 where smoking was not permitted.

7. Management allowed Brooks to take a leave of absence, albeit without salary, from October 26, 1982, until the effective date of a new County ordinance prohibiting smoking in June 1983.

8. Management mounted an air filtration machine on the ceiling of Brooks's and Capo's former work area in October 1982.

9. Management initiated a task force on smoking on the job in 1982 which recommended a designated smoking area policy.

10. Management formed a subcommittee of the Central Cooperative Conference to study smoking on the job throughout Fresno County in November 1982.

11. The County implemented an ordinance prohibiting smoking except in designated areas.

According to the County, if the Commission had properly focused upon the reasonableness of the County's efforts in these circumstances, it would have been compelled upon this record to find no discrimination. (We note the record reflects that except for the countywide ordinance prohibiting smoking, none of its efforts was successful. The ordinance did not go into effect until June 1983.)

The Commission contends in order for accommodation efforts to be reasonable they must be successful (*Stutts* v. *Freeman* (11th Cir. 1983) 694 F.2d 666, 669), must be individually tailored to meet the needs of the handicapped employee (*Hall* v. *United States Postal Service* (6th Cir. 1988) 857 F.2d 1073), and must preserve the handicapped employee's employment status (*Barron* v. *Safeway Stores, Inc.* (E.D.Wash. 1988) 704 F.Supp. 1555, 1568). The Commission further contends the County failed to show the accommodation measures requested by Brooks and Capo would impose an undue hardship on its operations. (Cal. Code Regs., tit. 2, § 7293.9.)

Section 7293.9, subdivision (a) of the Commission's regulations defines "reasonable accommodation" by way of example as follows:

"(a) . . . Reasonable accommodation may, but does not necessarily include, nor is it limited to, such measures as:

"(1) Accessibility. Making facilities used by employees readily accessible to and usable by handicapped individuals;

"(2) Job Restructuring. Job restructuring, reassignment or transfer, part-time or modified work schedules, acquisition or modification of equipment or devices, the provision of readers or interpreters, and other similar actions; and

"(3) Alteration of Premises. Structural alteration of buildings or grounds." (Cal. Code Regs., tit. 2, § 7293.9, subd. (a).)

Government Code section 12994 provides an employer is not required to ". . . make any accommodation for an employee who has a physical handicap that would produce undue hardship to the employer." Subdivision (b) of section 7293.9 of the Commission's regulations identifies some of the factors to be considered in determining whether an accommodation would impose an undue hardship on the employer, including, but not limited to:

"(1) The overall size of the establishment or facility with respect to the number of employees, the size of budget, and other such matters;

"(2) The overall size of the employer or other covered entity with respect to the number of employees, number and type of facilities, and size of budget;

"(3) The type of the establishment's or facility's operation, including the composition and structure of the workforce;

"(4) The type of the employer's or other covered entity's operation, including the composition and structure of the workforce;

"(5) The nature and cost of the accommodation involved;

"(6) The availability of state, federal, or local tax incentives; and

"(7) The amount of assistance available from other agencies or organizations, including the California State Department of Rehabilitation, the U.S. Department of Health and Human Services, and other private and public agencies concerned with the physically handicapped." (Cal. Code Regs., tit. 2, § 7293.9, subd. (b).)

We find no California authority which has interpreted these regulations in order to define a prima facie claim for physical handicap discrimination

in the form of failure to provide reasonable accommodation. However, the Rehabilitation Act, which prohibits handicap discrimination in federally funded programs,[3] has virtually identical regulations, and we rely on case law interpreting those regulations for guidance. (*Fire Fighters Union* v. *City of Vallejo* (1974) 12 Cal.3d 608, 617 [116 Cal.Rptr. 507, 526 P.2d 971].)

Handicap discrimination issues brought by federal employees are initially adjudicated by one of two administrative tribunals—the Merit Systems Protection Board or the Equal Employment Opportunity Commission. The Merit Systems Protection Board has adopted the frame of analysis used in title VII[4] discrimination cases as set forth by the United States Supreme Court in *McDonnell Douglas Corp.* v. *Green* (1972) 411 U.S. 792, 802-804 [36 L.Ed.2d 668, 677-679, 93 S.Ct. 1817]. The initial burden is on the complainant to prove that he or she is a "qualified handicapped person"[5] and that the employer failed to accommodate his or her handicapping condition. Once the prima facie case is established, the burden shifts to the employer to produce evidence demonstrating it has not engaged in discrimination, such as establishing that the accommodation would impose an undue hardship on the operation of its program. (See 29 C.F.R. 1613.704.) If the employer's evidence rebuts that prima facie case, the complainant is entitled to a fair opportunity to prove the reason given for failing to accommodate is, in fact, a pretext for prohibited handicap discrimination. (See *Pletten* v. *Department of the Army* (1984) 23 Merit Systems Protection Rptr. 682; *Ignacio* v. *U.S. Postal Service, supra,* 16 Merit Systems Protection Rptr. 530; *Stalkfleet* v. *U.S. Postal Service* (1981) 6 Merit Systems Protection Rptr. 637, 647-648.)

Placed in this analytical framework, the County's contention is, even assuming it fails to demonstrate undue hardship, it has rebutted the prima facie case of failure to accommodate by demonstrating its accommodation efforts were reasonable. According to the County, an employer need not implement the accommodation measures requested by the handicapped

---

[3] The Rehabilitation Act, as amended, states in pertinent part:

"No otherwise qualified individual with handicaps in the United States, as defined in section 706(8) of this title, shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service." (29 U.S.C. § 794.)

[4] 42 United States Code section 1981 et seq.

[5] "Qualified handicapped person" under the Rehabilitation Act means that the complainant has a physical or mental impairment which substantially limits one or more of the complainant's major life activities, including breathing, and the complainant is capable of performing the essential functions of his position with reasonable accommodation without endangering the health and safety of himself and others. (29 C.F.R. § 1613.702(f); *Ignacio* v. *U.S. Postal Service* (1983) 16 Merit Systems Protection Rptr. 530.)

employee if less drastic or less inconvenient measures are objectively reasonable. This contention begs the question, which is whether the County's accommodation efforts were reasonable. The Commission implicitly found they were not.

■ ■ ■ ■ The County relies upon *Vickers* v. *Veterans Administration, supra,* 549 F.Supp. 85, to support its contention that evidence of good faith[6] reasonable efforts at accommodation is sufficient to overcome a prima facie case of handicap discrimination based upon failure to accommodate. In *Vickers,* the court found that the complainant was a qualified handicapped person because of "hypersensitivity" to smoke, but rejected his claim that the Veterans Administration had failed to make reasonable accommodation to his handicap.[7] There are several important distinctions between Vickers and the present case.

In *Vickers* there was a nationwide policy of the Veterans Administration which permitted smoking in work areas while stressing the need to " '. . . maintain an equitable balance between the rights of smokers and nonsmokers.' " (549 F.Supp. at pp. 88-89.) Based upon this nationwide policy, the court determined the department head was not authorized to ban smoking in the department. (549 F.Supp. at p. 89.) ■ In the case of Brooks and Capo there is no evidence of a countywide policy permitting smoking in work areas. There is evidence in the form of an interoffice memorandum from the Fresno County Counsel that the head of the department had authority to designate clerical 207 a "no smoking" area.

It is also apparent from the facts in *Vickers* that everything, short of an absolute ban on smoking in the area, had been done by the department head to accommodate Vickers's need for a smoke-free environment. Several of the measures implemented in *Vickers* are similar to those measures adopted by the County, except that in *Vickers* smoke had been almost completely

---

[6] What the County means by using the term "good faith" in this context is unclear. To the extent that this means the employer's good faith or lack thereof is determinative in assessing the reasonableness of accommodation, this contention is unfounded. An employer cannot hide behind its asserted good faith in order to avoid responsibility for discriminatory policies and working conditions. The United States Supreme Court has rejected the contention that federal law proscribes only intentional discrimination against the handicapped. The court recognized in *Alexander* v. *Choate* (1985) 469 U.S. 287, 295 [83 L.Ed.2d 661, 668, 105 S.Ct. 712] that handicap discrimination is generally the product of "thoughtlessness and indifference—of benign neglect." (Fn. omitted.)

[7] It is important to note the *Vickers* court did not analyze reasonable accommodation in light of the Rehabilitation Act's implementing regulations. Indeed, it noted Vickers had failed to cite any authority to the effect that there was a duty to make reasonable accommodation. The *Vickers* court did not have the benefit of the federal regulations regarding reasonable accommodation and therefore did not address the issue of undue hardship.

eliminated from the work environment by employees voluntarily agreeing not to smoke in the same office in which Vickers worked and in adjacent offices. "The only tobacco smoke to which plaintiff is now exposed is that which may at times drift into Room 105-C from Room 105-A or 105-B. This drifting in of smoke is not a constant phenomenon and, when it does occur, the smoke is normally not heavy . . . ." (549 F.Supp. at p. 89.)

The court found Vickers could have taken action to avoid what smoke remained in his environment. "It appears that plaintiff can at any time close the door which separates Room 105-C from 105-D and that this would have the effect of preventing the entrance into Room 105-C of any smoke which might drift out of Rooms 105-A or 105-B." (549 F.Supp. at p. 89.)

The evidence also reflected Vickers could have reduced his exposure to smoke by moving his desk farther away from the door and closer to a window. Despite authorization to move his desk, Vickers chose to have his desk remain in the same position. (549 F.Supp. at p. 90.) Vickers also was offered, but refused, transfer to an outside maintenance job. In short, the evidence in *Vickers* reflected the employer did everything, short of a formal ban on smoking in the department, which it reasonably could do to accommodate Vickers's handicap.

The evidence in this case, in contrast, reflects the environment in clerical 207 was like a smoke-filled bar in which everyone "gagged together." Although supervisors asked smokers to be considerate of nonsmokers, smokers did not stop smoking in clerical 207. Placing smokers and nonsmokers at separate ends of the room did not work. Using air filters did not work. Placing Brooks and Capo in the tiny office adjacent to clerical 207 did not work since the office and smoking area were on the same ventilation system. The ceiling-mounted air filtration machine did not work and was removed. Installation of exhaust systems was not investigated until over one year after Brooks and Capo requested accommodation, and even then the purpose of these systems was to resolve the general problem of smoke in connection with the countywide ordinance, not to accommodate Brooks and Capo. "Permitting" Brooks to take an unpaid leave of absence succeeded in removing her from the smoke-filled environment, but violated state law since she was precluded from enjoying the privileges of employment because of her handicap. (Gov. Code, § 12940, subd. (a).)

The finding by the court in *Vickers* that the Veteran's Administration had reasonably accommodated Vickers's need for a smoke-free work environment was supported by the evidence in that case. The same finding is not compelled by the evidence in this case. The Commission did not abuse its discretion in finding that the County failed to provide reasonable accommodation.

## PARTS III-V*

. . . . . . . . . . . . . . . . . . . . . .

## PART VI

### LACHES

 The County complains that the Department and Commission caused numerous unreasonable delays in the proceedings, thereby giving rise to laches. It concedes the Department had a full year from the date the complaints were filed within which to issue the accusations (Gov. Code, § 12965, subd. (a)), but claims it was unreasonable for the Department to take the full year. It cites the fact that the administrative law judge granted numerous continuances over the County's objection, which resulted in 16 hearings over an 11-month period. Finally, it points to the delay of over two years before the Commission issued its decision after it decided not to adopt the administrative law judge's opinion and to decide the case itself. According to the County, the delays caused substantial prejudice because of the accumulating interest on the monetary awards.

 Laches is an equitable defense which is established by a showing that the plaintiff has been guilty of an unreasonable delay and either acquiescence in the act of which the plaintiff complains or prejudice to the defendant as a result of the delay. (*Conti* v. *Board of Civil Service Commissioners* (1969) 1 Cal.3d 351, 359 [82 Cal.Rptr. 337, 461 P.2d 617].) The doctrine bars an equitable remedy when there has been an inexcusable delay *on the part of the plaintiff.* The parties seeking remedies in this case are Brooks and Capo. The County points to no evidence in the record to indicate that Brooks and Capo caused the delays. It would be inequitable to preclude them from a remedy when they timely asserted their rights. Delays on the part of the Commission and Department do not give rise to a laches defense.

---

*See footnote, *ante*, page 1541.

## DISPOSITION

We affirm the judgment insofar as it orders the Commission to set aside its award of compensatory damages in favor of Brooks and Capo. We reverse the judgment in all other respects. We award costs on appeal to appellant.

Vartabedian, J., and Thaxter, J., concurred.

A petition for a rehearing was denied February 19, 1991, and the petition of respondent County of Fresno for review by the Supreme Court was denied April 11, 1991. Mosk, J., was of the opinion that the petition should be granted.