Robert A. SCHULTZ, Plaintiff,

v.

SPRAYLAT CORPORATION, and Does 1 through 10, Defendants.

No. CV 93–4777–RJK.

United States District Court, C.D. California.

Aug. 22, 1994.

Vance F. Van Kolken, Van Kolken & Penn Lawyers, San Bernardino, CA, for Robert A. Schultz.

Michael L. Wolfram, Tracy Thornburg, Morgan Lewis & Bockius, Los Angeles, CA, Gregory W. Homer, Anderson Kill Olick & Oshinsky, Washington, DC, for Spraylat Corp.

## MEMORANDUM OF DECISION AND ORDER GRANTING SPRAYLAT CORPORATION'S MOTION FOR SUMMARY JUDGMENT

KELLEHER, District Judge.

This action came on for hearing on August 22, 1994, on the Motion for Summary Judgment filed by Defendant Spraylat Corporation. The Court, having reviewed all papers filed both in support of and opposition to the motion, as well as having heard oral argument thereon, determines as follows:

### I.  BACKGROUND

This is a wrongful termination action. Plaintiff Robert A. Schultz ("Schultz"), a citizen of the state of Washington, was first employed by Defendant Spraylat Corporation ("Spraylat"), a New York corporation, as a salesman in 1983. Shortly after his hiring, Schultz was promoted to the position of West Coast Sales Manager. In February 1989, after giving Spraylat approximately two weeks advance notice, Schultz voluntarily terminated his employment with Spraylat.

In September 1990, Schultz was rehired by Spraylat as the Territorial Sales Representative for the Pacific Northwest Region. During discussions with representatives of Spraylat prior to Schultz's re-employment, Schultz informed Spraylat that, as a result of surgery on his sinuses, he was unable to travel by airplane without suffering debilitating pain. During these same discussions, Spraylat informed Schultz that the job would require Schultz to relocate from the Los Angeles area to the pacific northwest.

At the time Schultz was re-employed by Spraylat in September 1990, a written employment agreement was entered into by both he and Spraylat (the "written contract"). No mention was made in the written contract of the circumstances under which Schultz's employment could be terminated.

In October 1991, Schultz was offered an expanded territory covering northern California as well as his old territory. In December 1991, Schultz was directed by Spraylat to take a test flight to see if his inability to fly had changed. Schultz took a test flight and determined that there was no change in his ability to fly and advised Spraylat of these results. Within twenty-four hours, Spraylat advised Schultz that they were terminating him because of a lack of sufficient business to support a full-time salesman in Schultz's territory. Schultz contends that this reason is pretextual, and that the true reason he was terminated is that he is unable to fly.

On July 9, 1993, Schultz filed a complaint in the Superior Court of the State of California for the County of Los Angeles. In this complaint, Schultz asserts causes of action for: (1) unlawful employment practices; (2) breach of an express employment contract; (3) breach of an implied-in-fact contract; (4) breach of the implied covenant of good faith and fair dealing; (5) violation of California Labor Code § 970; and (6) breach of an oral contract. In this complaint, Schultz seeks to recover for his allegedly wrongful termination and for Spraylat's alleged failure to pay Schultz's moving expense. On August 10, 1993, Spraylat timely removed that action to this Court. Jurisdiction is based upon

diversity of citizenship. Spraylat now moves for summary judgment.

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper pursuant to Rule 56(c) "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.*

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; to defeat a motion for summary judgment, the non-moving party must affirmatively set forth facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The moving party who does not have the burden of proof at trial "need provide nothing more than a reference to those materials on file in the case which support the movant's belief that there is an absence of any genuine issues of material fact." *Musick v. Burke,* 913 F.2d 1390, 1394 (9th Cir.1990).

## III. DISCUSSION

### A. First Cause of Action: Unlawful Employment Practices

Schultz's first cause of action alleges a violation of California's Fair Employment and Housing Act, ("FEHA"), Cal.Gov.Code § 12900 *et seq.* (West 1992 & Supp.1994). Specifically, Schultz alleges that Spraylat terminated him because of a physical disabili-

ty—his inability to travel by air—in violation of Cal.Gov.Code § 12940.[1]

### 1. Schultz's Condition Does Not Constitutes a "Physical Disability" within the Meaning of FEHA

██ The FEHA defines "physical disability" as including:

[A]ny physiological disease, disorder, condition, cosmetic disfigurement or anatomical loss that does both of the following:

(A) Affects one or more of the following body systems: neurological, immunological, musculoskeletal, special sense organs, respiratory ... [and]

(B) Limits an individual's ability to participate in major life activities.

Cal.Gov.Code § 12926(k)(1) (West Supp. 1994).

While it appears that Schultz's condition may satisfy the requirements of § 12926(k)(1)(A) in that his condition appears to affect the neurological system, the Court is convinced that his condition does not satisfy the requirement of § 12926(k)(1)(B).

It is undisputed that Schultz is completely unable to travel by air due to a condition in his sinus passages. However, travelling by air cannot be deemed a "major life activity." Regulations issued under the FEHA by the California Fair Employment and Housing Commission define the term "major life activity" as including: "[f]unctions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." Cal.Code Regs. tit. 2, § 7293.6 (1994). Nowhere in this listing is there any mention of "flying" or anything remotely akin to flying. Indeed, nothing in the FEHA or its legislative history indicates that the term "major life activity" is to be construed as embracing every possible activity in modern life.

In support of his argument, Schultz cites *County of Fresno v. Fair Emp. & Housing Com'n,* 226 Cal.App.3d 1541, 277 Cal.Rptr. 557 (1991). In that case, the court found that a person who was hypersensitive to tobacco smoke was "physically disabled" within the

1. "It shall be an unlawful employment practice ... [f]or an employer, because of ... physical handicap .. to discharge [a] person from em-

ployment...." Cal.Gov.Code § 12940 (West Supp.1994).

meaning of the FEHA. *Id.* at 1550, 277 Cal.Rptr. 557. However, the plaintiff's hypersensitivity in *County of Fresno* clearly limited the plaintiff's ability to participate in a major life activity—breathing. Consequently, *County of Fresno* is easily distinguishable from the instant case.

Since Schultz's physiological condition does not prevent him from participating in major life activities, the Court finds that he is not "physically disabled" within the meaning of the FEHA and hence his claim for a violation of Cal.Gov.Code § 12940 fails as a matter of law.

**2. Schultz has Failed to Produce Sufficient Evidence that Spraylat's Articulated Reasons for Discharging him were Pretextual**

■ Even if Schultz were "physically disabled" within the meaning of the FEHA, he has nevertheless failed to produce sufficient evidence that Spraylat's discharge was improper. To rebut Schultz's *prima facie* case of disability discrimination, Spraylat is only required to "articulate some legitimate, non-discriminatory reason" for its decision to terminate Schultz's employment. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). Once Spraylat articulates a legitimate business reason for its personnel decision, Schultz may avoid dismissal only by producing sufficient evidence to establish that Spraylat's articulated reason was not the true reason, but was in fact a mere pretext for unlawful disability discrimination. *Id.*

■ Spraylat has produced the following uncontroverted evidence by way of demonstrating a legitimate business reason:

1. In 1991, Spraylat's West Coast Division was losing money. Specifically, division sales for the period January 1, 1991 to July 31, 1991 were down $600,000 for the same period the preceding year, and the division had lost nearly $450,000 year-to-date;

2. In an effort to reverse the declining fortunes of Spraylat's Western Division, Charles Mahoney ("Mahoney") was hired by Spraylat in August 1991 to assess the economic conditions of the West Coast Division and to take steps to return the West Coast Division to profitability;

3. Mahoney concluded that staffing levels had to be reduced to bring them into line with anticipated revenue. Accordingly, beginning in October of 1991 and through the end of January 1992, total employee headcount in the division was reduced by 22 percent. As part of this downsizing, 3 sales positions were eliminated, one of which was Schultz's;

4. Since Schultz's termination, Spraylat has not hired anyone to replace him, nor has it assigned any of its remaining sales representatives to Schultz's former territory on a full-time basis.

These uncontroverted facts demonstrate that Spraylat has articulated a legitimate business reason for terminating Schultz: it purports to have terminated Schultz to save money. The burden therefore shifts to Schultz to produce sufficient evidence that Spraylat's articulated reason was pretextual. *Id.*

In an attempt to meet this burden, Schultz points to the fact that he was terminated within twenty-four hours of informing Spraylat that he was still unable to travel by air. Schultz also points to the fact that Spraylat had discussed with Schultz the possibility of having Schultz move to the San Francisco area and take on additional territory. However, the Court determines that this evidence, standing alone, is insufficient to meet Schultz's burden. As such, even if Schultz were disabled within the meaning of the FEHA, he has failed to produce sufficient evidence to support his claim for a violation of the FEHA.

**B. Second Cause of Action: Breach of an Express Oral Contract**

■ In his complaint, Schultz alleges that Spraylat breached an express employment contract not to terminate his employment, except for good cause. It is undisputed, however, that Schultz's written contract with Spraylat did not indicate the circumstances under which his employment could be terminated. In addition, Schultz testified at his

deposition that no oral assurances were made by Spraylat, or any agent of Spraylat, during his employment concerning the circumstances pursuant to which his employment could be terminated. Schultz testified that the circumstances pursuant to which his employment could terminate "was just a subject that never came up and was never talked about."

The only evidence Schultz offers as to the existence of this oral contract is a statement Schultz alleges that he made to Dick Oppenheim ("Oppenheim"), a Spraylat employee, that "I'll probably be here until I retire if that's okay with you." This statement was made in response to the question, "[n]ow you're not going to do this again, are you?," by which Oppenheim meant did Schultz plan on quitting again. This, coupled with the fact that Schultz worked for Spraylat for six years before he quit and came back, is the only evidence of a promise that Schultz could only be terminated for good cause.

It is clear that Schultz has failed to carry his burden of demonstrating the existence of an oral promise to terminate only for good cause. Consequently, Schultz is bound by his written contract, which does not contain any specified term of employment. Under California law, employment having no specified term is considered "at will" employment. Cal.Lab.Code § 2922 (West 1989). *See Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 675, 254 Cal.Rptr. 211, 223, 765 P.2d 373, 385 (1988). Accordingly, the Court finds that Schultz's claim for breach of an oral employment contract fails as a matter of law.[2]

## C. Third Cause of Action: Breach of an Implied–In–Fact Contract

■■■ As an alternative to his illusory oral employment contract, Schultz alleges that Spraylat breached an implied-in-fact employment contract by terminating Schultz without good cause. To determine the existence and content of an implied-in-fact employment contract, California courts analyze the following factors: "the personnel policies or practices of the employer, the employee's longevity of service, action or communications by the employer reflecting assurances of continued employment, and the practices of the industry in which the employee is engaged." *Foley*, 47 Cal.3d at 679, 254 Cal.Rptr. 211, 765 P.2d 373.

Schultz offers no evidence as to the personnel policies or practices of Spraylat. The only evidence Schultz offers in support of his argument is the statement he made to Oppenheim that he did not plan on leaving until he retired. Schultz argues that this supports an inference that Spraylat was reciprocally assuring that Schultz would not be discharged except for good cause. However, Schultz has clearly failed to present sufficient evidence to prevail on this claim. Consequently, the Court determines that Schultz's cause of action for breach of an implied-in-fact contract fails as a matter of law.[3]

## D. Fourth Cause of Action: Breach of the Implied Covenant of Good Faith and Fair Dealing

■■■ Schultz argues that his termination violated the implied covenant of good faith and fair dealing. To succeed on this claim, Schultz must show that the express policies and practices of Spraylat regarding adjudication of grievances and terminations, coupled with Schultz's longevity of employment, demonstrate that a covenant of good faith and fair dealing existed between the parties such that termination of Schultz without good cause would violate the covenant. *See Shapiro v. Wells Fargo Realty Advisors,* 152 Cal.App.3d 467, 473, 199 Cal.Rptr. 613 (1984).

As mentioned above, Schultz has failed to offer any evidence as to Spraylat's express

---

**2.** Again, even if Schultz had carried his burden of demonstrating the existence of an oral promise to terminate only for good cause, he has nevertheless failed to carry his burden of providing sufficient evidence to demonstrate that Spraylat's purported reason for discharging Schultz was pretextual. *See* Section III(A)(2), *supra.*

**3.** Again, even if Schultz had carried his burden of demonstrating the existence of an implied-in-fact contract, he has nevertheless failed to carry his burden of providing sufficient evidence to demonstrate that Spraylat's purported reason for discharging Schultz was pretextual. *See* Section III(A)(2), *supra.*

policies and practices regarding adjudication of grievances and terminations. Nor has Schultz demonstrated longevity of employment. His voluntary termination and subsequent re-employment for a period of approximately one year fails the longevity prong of *Shapiro. See McCabe v. General Foods Corp.,* 811 F.2d 1336, 1339–40, (9th Cir.1987) (plaintiff who voluntarily left the employ of defendant twice and who was terminated approximately one year after most recent re-hiring had failed to demonstrate longevity of employment). Consequently, Schultz's claim for breach of the implied covenant of good faith and fair dealing fails as a matter of law.[4]

### E. Fifth Cause of Action: Violation of Cal.Lab.Code § 970

■ California Labor Code § 970 prohibits employers from inducing "'employees to move to, from, or within California by misrepresentation of the nature, length or physical conditions of employment.'" *Funk v. Sperry Corp.,* 842 F.2d 1129, 1133 (9th Cir. 1988) (*quoting Tyco Indus. v. Superior Court,* 164 Cal.App.3d 148, 155, 211 Cal.Rptr. 540, 544 (1985)). In order to establish a claim under § 970, Schultz must demonstrate that the representations made by Spraylat were "knowingly false." Cal.Lab.Code § 970 (West 1989).

■ Schultz argues that when he was hired to develop a new territory in the pacific northwest, he assumed that he would be given a reasonable time in which to develop business in the new territory. Schultz has testified that someone in his position is typically given between nine and twenty months to develop business. However, Schultz has also testified that the circumstances under which his employment would cease "was just a subject that never came up and was never talked about."

Schultz also argues that he was told that his inability to fly would not be a problem, and that his subsequent termination demonstrates that this statement was a misrepresentation. As discussed above, however, Schultz has failed to provide sufficient evidence from which a jury could conclude that Spraylat's reason for terminating Schultz was pretextual. As such, Schultz has necessarily failed to provide sufficient evidence from which a jury could conclude that the above statement was a misrepresentation. The Court therefore finds that Schultz has failed to produce evidence that an misrepresentations were made by Spraylat, let alone that such misrepresentations were knowingly false as required by Cal.Lab.Code § 970.

### F. Sixth Cause of Action: Breach of an Oral Contract

■ Schultz's sixth and final cause of action asserts a claim for Spraylat's breach of an alleged oral promise to reimburse Schultz for his moving expenses. Pursuant to the written contract between Schultz and Spraylat, Spraylat was obligated to pay the moving expenses Schultz incurred in connection with his relocation from West Covina, California, to Vancouver, Washington. At the time Schultz accepted the job with Spraylat and moved to Washington, he chose not to move all of his furniture to Washington. Instead, Schultz opted to keep some of his furniture in storage and have Spraylat pay the ongoing storage costs rather than the cost of moving the furniture.

Schultz has testified that all moving and storage expenses that he incurred while he was employed by Spraylat were reimbursed by Spraylat. Schultz has further testified that Spraylat continued to pay for furniture and storage costs incurred by Schultz for approximately two months after Schultz was terminated from his employment in December 1991. In December 1993, Schultz finally moved his stored furniture to Washington. Schultz now seeks to recover from Spraylat for the expenses incurred in moving his stored furniture to Washington two years after his employment with Spraylat was terminated.

---

4. Again, even if Schultz had carried his burden of demonstrating the existence of an implied covenant of good faith and fair dealing, he has nevertheless failed to carry his burden of providing sufficient evidence to demonstrate that Spraylat's purported reason for discharging Schultz was pretextual. *See* Section III(A)(2), *supra.*

Spraylat argues that they satisfactorily performed all of their obligations under the contract, hence, Schultz is precluded as a matter of law from prevailing on this claim. Spraylat is correct. It is difficult to imagine how Schultz can argue that Spraylat had an ongoing obligation to pay to move the furniture Schultz voluntarily decided to place in storage rather than have moved at the time he accepted his employment with Spraylat. Indeed, if Schultz decided to wait twenty years before moving the furniture, would Schultz still contend that Spraylat was liable for the costs of such a move? In addition, Schultz has testified that the expenses he incurred in December 1993 in moving his stored furniture to Washington were reimbursed by Schultz's new employer, Forest Paint, with the exception of a few hundred dollars. The Court is therefore convinced that Spraylat fully performed its obligations under the written contract with respect to the reimbursement of Schultz's moving expenses.

Notwithstanding the above, Schultz contends that there existed an oral contract whereby Spraylat promised to pay to move the stored furniture. Yet Schultz's contention is not supported by the evidence. Schultz is therefore bound by the written contract and his cause of action for breach of an oral promise to reimburse his moving expenses therefore fails as a matter of law.

### IV. ORDER

The Court, having found that there exist no genuine issues of material fact and that Spraylat is entitled to judgment as a matter of law, orders as follows:

It is HEREBY. ORDERED AND ADJUDGED that Spraylat's Motion for Summary Judgment shall be GRANTED with respect to all causes of action contained in Schultz's complaint. It is FURTHER ORDERED that Defendants Does 1 through 10 are HEREBY DISMISSED.

IT IS SO ORDERED.