LORRAINE K. MURPHY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Murphy v. Commissioner
Docket Nos. 15233-91, 14613-93
United States Tax Court
T.C. Memo 1995-76; 1995 Tax Ct. Memo LEXIS 77; 69 T.C.M. (CCH) 1916; February 16, 1995, Filed *77 Decisions will be entered under Rule 155. For petitioner: Lawrence J. Groskin. For respondent: Alan S. Kline, Kevin Kilduff, and Paulette Segal. LARO
LARO
MEMORANDUM OPINION LARO, Judge: This case is before the Court pursuant to petitions filed by Lorraine K. Murphy for a redetermination of respondent's determinations of deficiencies in her 1982, 1983, 1984, 1987, 1988, and 1989 Federal income taxes and additions to those taxes. [1] Respondent's determination with respect to petitioner's 1987 taxable year is reflected in a notice of deficiency issued to petitioner on April 11, 1991. Respondent's determination with respect to petitioner's 1982, 1983, 1984, 1988, and 1989 taxable years is reflected in a notice of deficiency issued to petitioner on April 7, 1993. The deficiencies and additions to tax are as follows: Additions to Tax Sec. Sec.
Sec. Sec
Sec. Year
Deficiency
6653(a)
6653(b)(1)
6661
6653(b)(2)
6653(a)
(1)(A) (1)(B) 1982
$ 19,877
-- $ 9,939
$ 4,969
[1]
--
1983
16,746
-- 8,373
4,187
[1]
--
1984
16,491
-- 8,246
4,123
[1]
--
1987
24,677
$ 1,234
-- 6,169
--
[2]
1988
8,556
-- -- -- --
--
1989
2,317
-- -- -- --
--
*78 Unless otherwise stated, section references are to the Internal Revenue Code in effect for the years in issue. Rule references are to the Tax Court Rules of Practice and Procedure. Certain exhibits were admitted into evidence through stipulations of the parties. The stipulations and accompanying exhibits are incorporated herein by this reference. The record also includes testimony of witnesses other than petitioner, [2] *79 other exhibits that were admitted at trial, and certain facts that were deemed admitted under Rule 90. [3] Petitioner resided in Monroe, New York, when she petitioned the Court. The issues for decision are: 1. Whether petitioner failed to report gross receipts for Murphy's Liquor store for the 1982, 1983, 1984, and 1987 taxable years. We hold that she did. 2. Whether petitioner failed to include sales tax collected on the unreported gross receipts, which was not paid to the State of New York for the 1982, 1983, 1984, and 1987 taxable years. We hold that she did. 3. Whether petitioner may deduct the unreported sales tax receipts which were not paid to the State of New York. We hold that she may not. 4. Whether petitioner is entitled to a 100-percent depreciation deduction for the business use of her personal automobile for the 1983 and 1984 taxable years. We hold that she is not. 5. Whether petitioner is entitled to a 100-percent *80 investment tax credit for the use of an automobile used in her business for the 1983 taxable year. We hold that she is not. 6. Whether petitioner has an unused general business tax credit for 1983 that may be carried forward to the 1984 taxable year. We hold that she does not. 7. Whether petitioner may deduct certain profit liability payments for the 1989 taxable year. We hold that she may not. 8. Whether petitioner may deduct certain expenses on her 1987, 1988, and 1989 Schedules C, Profit or Loss from Business. We hold that she may not. 9. Whether petitioner may deduct certain deductions on her 1987 Schedule A, Itemized Deductions. We hold that she may not. 10. Whether petitioner is liable for Federal income tax with respect to Social Security payments received during the 1987, 1988, and 1989 taxable years. We hold that she is. 11. Whether petitioner is liable for self-employment tax on unreported income for the 1982, 1983, 1984, 1987, 1988, and 1989 taxable years. We hold that she is. 12. Whether petitioner is entitled to a $ 3,000 capital loss and interest expense deductions for the 1983 and 1984 taxable years with respect to purchases of futures contracts. *81 We hold that she is entitled to a $ 3,000 capital loss for 1983 and 1984 but is not entitled to an interest expense deduction. 13. Whether petitioner has a capital loss deduction for the 1987 taxable year. We hold that she does not. 14. Whether petitioner is liable for the addition to tax for fraud under section 6653(b)(1)for the 1982, 1983, and 1984 taxable years. We hold that she is. 15. Whether petitioner is liable for the addition to tax for fraud under section 6653(b)(2) with respect to the entire amount of each deficiency for the 1982, 1983, and 1984 taxable years. We hold that she is so liable to the extent provided below. 16. Whether petitioner is liable for the additions to tax for negligence under section 6653(a)(1) and (2) with respect to the entire deficiency for the 1987 taxable year. We hold that she is. 17. Whether petitioner is liable for the additions to tax for substantial understatement under section 6661(a) for the 1982, 1983, 1984, and 1987 taxable years. We hold that she is. 18. Whether the period of limitations under section 6501 has expired for 1982, 1987, 1988, or 1989 taxable years. We hold that it has not. 19. Whether petitioner's attorney, *82 Lawrence J. Groskin, is liable for sanctions under section 6673(a)(2). We hold that he is. 20. Whether petitioner is liable for sanctions under section 6673(a)(1). We hold that she is not. Discussion
Except with respect to respondent's allegations of fraud, the burden of proof is on petitioner to show that respondent's determinations set forth in her notices of deficiency are incorrect. Rule 142(a) and (b); Welch v. Helvering, 290 U.S. 111, 115 (1933). Respondent must prove by clear and convincing evidence that petitioner is liable for an addition to tax for fraud. Sec. 7454(a); Rule 142(b). Petitioner bears the burden of proving her entitlement to any deduction that she claimed either before or after respondent issued her notices of deficiency. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Deductions are strictly a matter of legislative grace, and petitioner must show that her deductions are allowed by the Internal Revenue Code. Petitioner must also keep sufficient records to substantiate any deduction that would otherwise be allowed by the Code. Sec. 6001. In order to meet her burden *83 of proof, petitioner must introduce sufficient evidence at trial to: (1) Make a prima facie case establishing that respondent committed the errors alleged in the petition; and (2) overcome the evidence submitted by (or otherwise favorable to) respondent. Lyon v. Commissioner, 1 B.T.A. 378, 379 (1925). 1. Gross Receipts of Murphy's Liquor Petitioner was born on May 3, 1927, in the Bronx, New York. Petitioner earned a high school diploma from Cathedral High School in Manhattan, New York, in 1945. She began working for Metropolitan Life Insurance Co. (Metropolitan) as an office clerk in 1946. She later advanced to the position of section supervisor of Metropolitan's cash and loan valuation division. This division evaluated applications for loans, which would be secured by existing insurance policies. Petitioner supervised approximately 100 Metropolitan employees in her section. Petitioner married William G. Murphy (Mr. Murphy) on August 27, 1964. Mr. Murphy worked as an engineer at a chemical plant owned by Interchemical Co. in Elizabeth, New Jersey, until his retirement in 1974. After Mr. Murphy retired, he and petitioner moved from Elizabeth *84 to Greenwood Lake, New York. Mr. Murphy and petitioner owned a residence in Greenwood Lake that petitioner had inherited from her mother's estate. Petitioner continued her employment with Metropolitan after moving to Greenwood Lake. Mr. Murphy acquired a wine and liquor store in Greenwood Lake in 1974 shortly after he and petitioner moved there. Mr. Murphy operated the wine and liquor store, which was known as "Murphy's Lake Liquors and Wines" (hereinafter referred to as Murphy's Liquors) from 1974 until his death on December 28, 1976. Petitioner inherited Murphy's Liquors from Mr. Murphy and continued to own and operate the business until 1990. Petitioner retired from her position with Metropolitan in June 1977. Thereafter, petitioner began receiving a pension from Metropolitan. During the period between Mr. Murphy's death and her retirement from Metropolitan, petitioner's cousin, Katherine Kelly (Katherine), operated Murphy's Liquors for petitioner. Petitioner paid Katherine a salary for working at Murphy's Liquors between December 1976 and June 1977. From the time that petitioner retired from Metropolitan, and through the taxable years in issue, petitioner did not hire *85 or retain any employees, on either a full-time or part-time basis, to assist her in operating Murphy's Liquors. During the taxable years in issue, petitioner generally worked at Murphy's Liquors 6 days per week. When petitioner had to leave Murphy's Liquors, she relied upon friends to watch the store in her absence. Petitioner never paid a wage to these friends. Rather, petitioner would usually treat these friends to dinner to compensate them for their efforts. In August 1982, petitioner replaced Murphy's Liquors' old cash register with a new computerized cash register. This computerized register had the capability for making separate daily receipt totals for the sale of wines, the sale of liquors, and for sales tax. Petitioner's old cash register did not have this capability. Petitioner began maintaining two different cash receipts journals in September 1982, shortly after she purchased the new cash register. The first cash receipts journal that petitioner maintained (the Working Journal) accurately reflected the gross receipts of Murphy's Liquors. Petitioner prepared the Working Journal from Murphy's Liquors' cash register machine tape at the end of each business day. *86 The second cash receipts journal (the Revised Journal) understated the actual receipts of Murphy's Liquors for 1982, 1983, and 1984, in the amounts of $ 6,547.46, $ 29,177.46, and $ 24,317.46, respectively. Petitioner prepared the Revised Journal by reducing the amount of receipts reflected in her Working Journal for Murphy's Liquors. Petitioner did not maintain the Revised Journal on a daily basis. Instead, petitioner made entries into the Revised Journal on an irregular basis. Petitioner continued this practice until December 1984. Petitioner knowingly and intentionally provided the Revised Journal to her tax return preparers for the purpose of preparing her tax returns for the 1982, 1983, and 1984 taxable years. Petitioner knowingly provided the Revised Journal to her tax return preparers with the purpose of intentionally concealing from her accountants and the Government a portion of the gross receipts generated by Murphy's Liquors for the 1982, 1983, and 1984 taxable years. Evelyn and Bernard Riley prepared petitioner's Federal income tax returns for the 1976 through 1984 taxable years. Mr. Riley prepared petitioner's 1982, 1983, and 1984 Schedules C for Murphy's Liquors. *87 Mrs. Riley prepared the remaining portion of those tax returns. Petitioner provided the Rileys with her business account bank statements, canceled checks, and check register relating to Murphy's Liquors on a regular basis. Mr. Riley prepared cash disbursement journals for Murphy's Liquors for the 1982, 1983, and 1984 taxable years using the records provided to him by petitioner. He would use these cash disbursement journals to prepare petitioner's 1982, 1983, and 1984 Schedules C. The expenses reflected on these schedules were taken from the cash disbursement journals. Mr. Riley entered the gross receipts reflected on these schedules by using petitioner's Revised Journal. Respondent's Criminal Investigation Division conducted a criminal investigation of petitioner. This investigation resulted in a recommendation that petitioner be prosecuted for tax evasion. On December 26, 1989, petitioner was indicted on two counts of evading her personal income taxes for the 1983 and 1984 taxable years. On June 14, 1990, petitioner pled guilty to one count of willfully filing a false Federal income tax return for the 1983 taxable year in violation of section 7206(1). On August 9, 1990, *88 petitioner was sentenced to 2 years' probation and 200 hours of community service. Petitioner was also ordered to cooperate with the Government in resolving her outstanding income tax controversies. Respondent determined that petitioner had unreported income of $ 29,429 and $ 25,148 for the 1983 and 1984 taxable years, respectively. Respondent utilized the specific item method in reconstructing petitioner's 1983 and 1984 gross receipts because petitioner maintained both the Working Journal and the Revised Journal for those years. Respondent deducted amounts contained in the Revised Journal from amounts contained in the Working Journal to compute the unreported income. Respondent utilized the percentage markup method in reconstructing petitioner's gross receipts for her 1982 and 1987 taxable years. Respondent utilized this method because petitioner did not have adequate records for those years. The burden of proof is on petitioner to show that respondent's method does not clearly reflect income. Rule 142(a). Petitioner has not met this burden. Petitioner presented no competent evidence to cause us to question respondent's method of reconstructing gross receipts. Moreover, *89 it is well established that if the Commissioner finds that a taxpayer's records are incomplete or inaccurate, she may resort to the percentage markup method in determining the taxpayer's taxable income. Bollella v. Commissioner, 374 F.2d 96 (6th Cir. 1967), affg. T.C. Memo. 1966-81; see also Webb v. Commissioner, 394 F.2d 366 (5th Cir. 1968), affg. a Memorandum Opinion of this Court; Wright v. Commissioner, T.C. Memo. 1967-86 (percentage markup method used for liquor store business). Petitioner argues in her brief that respondent's determinations were arbitrary and excessive because she failed to take into account common retail industry expenses.[4] We refuse to consider this argument. This allegation was not raised in the petition or petitioner's other pleadings. Therefore, petitioner is deemed to have conceded the issue. [5] Rule 34(b)(4); Jarvis v. Commissioner, 78 T.C. 646, 658 n.19 (1982); see also Merlino v. Commissioner, T.C. Memo. 1993-200. Because petitioner has not met her burden, we sustain *90 respondent's determination that petitioner had unreported income of $ 38,746, $ 29,429, $ 25,148, and $ 46,074 for the 1982, 1983, 1984, and 1987 taxable years, respectively. *91 2. Sales Tax Income Received by Murphy's Liquors in 1982, 1983, 1984, and 1987
Respondent increased petitioner's income by $ 2,680, $ 3,024, $ 3,712, and $ 3,240 for the 1982, 1983, 1984, and 1987 taxable years, respectively, for sales tax that petitioner collected but did not pay to the State of New York. Respondent concluded that gross receipts recorded in petitioner's Working and Revised Journals did not include any of the sales tax that was actually collected on petitioner's gross receipts. Respondent, therefore, determined that petitioner understated her gross receipts by $ 2,680, $ 3,024, $ 3,712 and $ 3,240 for the 1982, 1983, and 1984 taxable years, respectively. Petitioner offered no evidence to dispute respondent's determinations, and the record is devoid of evidence disproving these determinations. We hold, therefore, that petitioner must include in income the sales tax received during the years in issue. 3. Sales Tax Deductions for 1982, 1983, and 1984
Respondent disallowed deductions to petitioner with respect to sales tax paid of $ 8,452, $ 11,289, and $ 12,307 for the 1982, 1983, and 1984 taxable years, respectively. Respondent disallowed these *92 amounts because petitioner did not include these amounts in income. [6] Petitioner offered no evidence to dispute respondent's determination, and the record is devoid of evidence disproving these determinations. Rule 142(a). We sustain respondent with respect to this issue. 4. Depreciation Deduction for Automobile
In 1983, petitioner purchased a 1983 Chrysler LeBaron. Petitioner claimed depreciation on this automobile in the amounts of $ 1,790 and $ 2,625 on her 1983 and 1984 Schedules C, respectively. Petitioner also claimed an investment tax credit of $ 397 for 1983 with respect to the purchase of this automobile. Petitioner's depreciation deductions and investment tax credit were calculated on the premise that she used her automobile 100 percent for business purposes. Respondent reduced the depreciation deductions shown on petitioner's 1983 and 1984 Federal income tax returns by $ 1,432 and $ 2,100, respectively. These reductions *93 were based upon petitioner's inability to establish that she used this automobile more than 20 percent for business purposes. Petitioner offered no evidence to refute respondent's determinations, and the record is devoid of evidence disproving these determinations. Rule 142(a). We hold, therefore, that petitioner is not entitled to the full amount of depreciation claimed with respect to the 1983, 1984, and 1987 taxable years. 5. Investment Tax Credit for Automobile
Taxpayers are allowed a tax credit for their investment in certain depreciable property in an amount equal to the sum of business credit carryforwards, current year business credits, and business credit carrybacks. Sec. 38. The amount of investment credit for a qualified automobile is 10 percent. Petitioner claimed a $ 1,193 investment tax credit based upon the purchase of her automobile. Petitioner took a $ 397 investment tax credit for the 1983 taxable year and carried forward the remainder to the 1984 taxable year. Respondent reduced petitioner's allowable investment tax credit for 1983 by 80 percent because petitioner could not establish that she used her automobile more than 20 percent for business *94 purposes. Therefore, respondent reduced petitioner's 1983 investment tax credit by $ 158. Petitioner offered no evidence to refute respondent's determination, and the record is devoid of evidence disproving these determinations. Rule 142(a). We, therefore, sustain respondent's determination with respect to petitioner's investment tax credit. 6. Carryforward of General Business Credit
As a result of the reduction of petitioner's investment tax credit for 1983, respondent also determined that petitioner was not allowed to carry forward a $ 434 general business credit that petitioner claimed on her 1984 Federal income tax return because the allowable credit was fully utilized in 1983. Petitioner offered no evidence to refute respondent's determination, and the record is devoid of evidence disproving this determination. Rule 142(a). We hold, therefore, that petitioner is not entitled to a carryforward of a general business credit to the 1984 taxable year. 7. Profit Liability Payments for 1989
Respondent disallowed a $ 4,787 deduction claimed as "buyer's percentage of profit" by petitioner on her 1989 Schedule C. This disallowance was based upon respondent's determination *95 that petitioner had not met the requirements of section 461 to claim such deduction. Petitioner offered no evidence to refute respondent's determination, and the record is devoid of evidence disproving this determination. Rule 142(a). We hold, therefore, that petitioner is not entitled to the claimed deduction. 8. 1987, 1988, and 1989 Schedule C Deductions
Respondent disallowed the following expenses claimed by petitioner on her 1987 Schedule C: Advertising
$  1,081
Insurance
1,304
expense
Legal &
895
professional
Rent Expense
3,939
Utilities &
3,030
telephone
Depreciation
2,867
Total disallowed
13,116
Respondent determined that these amounts were neither ordinary and necessary nor were they expended for the purposes designated. Respondent disallowed the depreciation deduction because petitioner could not establish that the depreciation was taken on assets used in a trade or business. Respondent disallowed the following expenses claimed by petitioner on her 1988 Schedule C: Expense
Per Return
Amount Allowed
Adjustment
Advertising
$ 1,440
$ 1,170
$    270
Auto
2,155
250
1,905
Misc. expenses
1,560
0
1,560
Outside labor
5,200
0
5,200
Theft expense
7,566
0
7,566
Cleaning
1,414
943
471
Utilities &
3,364
1,771
1,593
telephone
Meals &
384
0
384
entertainment
Total disallowed
18,949
*96 Respondent disallowed these expenses because petitioner failed to substantiate these deductions. Respondent reduced the deduction claimed by petitioner on her 1989 Schedule C for utilities by $ 1,489. This reduction was based upon respondent's determination that this amount was not ordinary and necessary, nor was it expended for the purpose designated. If a taxpayer has no records to prove the amount of a business expense deduction, but a court is satisfied that the taxpayer actually incurred some expense, it may make an allowance based on an estimate. Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731 (1985). To make an estimate of expenses under the Cohan rule, there must be sufficient evidence that the amount was spent or incurred for the stated purpose. In the instant case, petitioner presented no evidence that the claimed expenses were spent or incurred for the stated purpose. We hold, therefore, that petitioner failed to meet her burden of proving her entitlement to any additional deductions, and reject her claim to the contrary. 9. 1987 Schedule A Deductions
*97 Respondent disallowed the following itemized deductions claimed by petitioner on her 1987 Schedule A: Medical
$   798
expenses
Taxes
1,304
Contributions
1,337
Tax prep.
95
Respondent disallowed these deductions because petitioner established neither that they were paid nor that they qualified as itemized deductions. In lieu of these itemized deductions, respondent allowed petitioner the standard deduction. Petitioner failed to present any evidence or documentation regarding the claimed itemized deductions. Petitioner, therefore, fails to meet her burden of proof. Rule 142(a). We hold that petitioner is not entitled to the claimed deductions. 10. Taxable Social Security Benefits
Respondent increased the amount of petitioner's Social Security benefits subject to taxation by $ 1,034, $ 3,215 and $ 1,523 for the 1987, 1988, and 1989 taxable years, respectively. The amount of Social Security tax payable with respect to Social Security benefits received is statutorily derived based upon a taxpayer's modified gross income under section 86(b)(2). To the extent that petitioner's modified adjusted gross income is affected by our ruling herein, the taxability *98 of petitioner's Social Security benefits should be adjusted accordingly in the Rule 155 computation. 11. Increased Self-Employment Tax
Respondent increased petitioner's self-employment tax for the 1982, 1983, 1984, 1987, 1988, and 1989 taxable years as a result of the changes made in her notices of deficiency. A self-employment tax is imposed on the self-employment income of every individual. Sec. 1401. Self-employment income is the gross income derived by an individual from any trade or business carried on by such individual, less the deductions allowed which are attributable to such trade or business. The amount of self-employment tax owed by a taxpayer is statutorily derived. To the extent that petitioner has unreported self-employment income, her self-employment tax liability should be increased accordingly in the Rule 155 computation. 12. Silver Futures
During 1983 and 1984, petitioner invested in silver futures. Petitioner's purchases were made through Moorgate Funding, Ltd. (Moorgate), of Fort Lauderdale, Florida. Petitioner's payments to Moorgate totaled $ 53,840 for 1983 and $ 18,086 for 1984. Respondent determined that petitioner realized a long-term *99 capital loss with respect to these payments and allowed petitioner a $ 3,000 capital loss for each year. Petitioner does not dispute this characterization. Petitioner asserts, however, that she is entitled to an additional deduction for interest expense with respect to amounts paid to Moorgate. Petitioner has the burden of proving her entitlement to all deductions claimed. Rule 142(a). Petitioner did not offer or present sufficient records substantiating this deduction. Sec. 6001. We hold, therefore, that she is not entitled to an interest expense deduction with respect to her payments to Moorgate. 13. 1987 Capital Loss Deduction
Petitioner claimed a $ 3,000 capital loss deduction on her 1987 Federal income tax return as a result of a capital loss carryforward. Respondent disallowed this capital loss deduction because petitioner could not establish that the loss was incurred or was deductible. Petitioner did not offer or present any evidence substantiating this carryforward. Rule 142(a). We hold, therefore, that she is not entitled to a capital loss deduction for the 1987 taxable year. 14 & 15. 1982, 1983, and 1984 Additions to Tax for Fraud
Respondent *100 must meet her burden of proving fraud through affirmative evidence; fraud is never imputed or presumed. Beaver v. Commissioner, 55 T.C. 85, 92 (1970). Respondent may prove fraud on the basis of facts deemed admitted. Doncaster v. Commissioner, 77 T.C. 334, 337-338 (1981). Whether fraud exists in a given situation is a factual determination that must be made after reviewing the particular facts and circumstances of the case. DiLeo v. Commissioner, 96 T.C. 858, 874 (1991), affd. 959 F.2d 16 (2d Cir. 1992). Respondent must show clearly that petitioner intended to evade a tax known or believed to be owing. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968). Respondent must prove that petitioner underpaid her taxes in each year in issue, and that some part of each underpayment was due to fraud, in order to sustain her allegations of fraud under section 6653(b)(1) for petitioner's 1982, 1983 and 1984 taxable years. [7] See also secs. 6211, 6653(c)(1). With respect to section 6653(b)(2), respondent must prove the portion *101 of the deficiency that is attributable to fraud. Sec. 6653(b)(2); Cooney v. Commissioner, T.C. Memo. 1994-50; Franklin v. Commissioner, T.C. Memo. 1993-184. *102 Based upon the record in this case, we are satisfied that petitioner intended to defraud the Government. She maintained two sets of books; the first set contained the actual gross receipts of Murphy's Liquors, and the second set contained figures which she intentionally altered to underpay her taxes. Petitioner also knowingly and intentionally provided her tax return preparers with the altered figures for the purpose of preparing her tax returns for the 1982, 1983, and 1984 taxable years. Petitioner knowingly and intentionally concealed from her tax return preparers and the Government a portion of the gross receipts generated by Murphy's Liquors for the 1982, 1983, and 1984 taxable years. [8] Accordingly, we sustain respondent's determination under section 6653(b)(1). For purposes of section 6653(b)(2), however, respondent has established by clear and convincing evidence that petitioner is liable only to the extent that her deficiency is attributable to the unreported income evidenced by the difference between the amounts contained in the Working Journal less the amounts contained in the Revised Journal for 1982, 1983, and 1984. *103 16. 1987 Additions to Tax for Negligence
Respondent determined that petitioner's underpayment is attributable to negligence for the 1987 taxable year. Section 6653(a)(1)(A) imposes an addition to tax equal to 5 percent of the underpayment if any part of the underpayment is attributable to negligence. Section 6653(a)(1)(B) imposes an addition to tax equal to 50 percent of the interest payable on the portion of the underpayment attributable to negligence. Negligence includes a lack of due care or a failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Goldman v. Commissioner, 39 F.3d 402, 406 (2d Cir. 1994), affg. T.C. Memo. 1993-480; Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioner bears the burden of proving that respondent's determination of negligence is erroneous. Rule 142(a); Goldman v. Commissioner, supra at 406; Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972). We hold that petitioner has failed to do so, and sustain respondent's determination of additions *104 to tax for negligence. 17. 1982, 1983, 1984, and 1987 Additions to Tax for Substantial Understatement
Respondent determined that petitioner is liable for additions to tax for substantial understatements of income tax under section 6661. The amount of the section 6661 addition to tax for additions assessed after October 21, 1986, equals 25 percent of the amount attributable to the substantial understatement. Omnibus Budget Reconciliation Act of 1986, Pub. L. 99-509, sec. 8002, 100 Stat. 1951; Pallottini v. Commissioner, 90 T.C. 498, 500-503 (1988). An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1)(A). An understatement is reduced to the extent it is: (1) Based on substantial authority, or (2) adequately disclosed in the return or in a statement attached to the return. Sec. 6661(b)(2). Respondent's determination of an addition to tax for substantial understatements under section 6661 is presumed to be correct, and petitioner bears the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). *105 Petitioner cited no relevant authority to support the amounts she reported and that were adjusted by respondent. Further, petitioner has failed to prove she is not liable for these additions to tax. Accordingly, we sustain respondent's determinations of additions to tax for substantial understatements under section 6661. 18. Period of Limitations for 1982, 1987, 1988, or 1989
The Commissioner generally must assess tax against an individual taxpayer within 3 years of the later of the due date or filing date of his or her return. Sec. 6501(a) and (b)(1); Mecom v. Commissioner, 101 T.C. 374, 381 (1993), affd. without published opinion 40 F.3d 385 (5th Cir. 1994). Petitioner asserts that respondent's notices of deficiency were not timely issued. Respondent must rely on an exception to the general rule in order to assess Federal income taxes with respect to petitioner's 1982 taxable year because respondent mailed a notice of deficiency after the 3-year period of limitations. One exception to the general rule is that the period of limitations is unlimited when the taxpayer files a false or fraudulent return. Sec. *106 6501(c). The definition of "fraud" for purposes of section 6501(c) is identical to the definition of "fraud" under section 6653(b). Asphalt Indus., Inc. v. Commissioner, 384 F.2d 229, 232 (3d Cir. 1967), revg. 46 T.C. 622 (1966). Given that respondent has proven fraud under section 6653(b) for petitioner's 1982 taxable year, we hold that the 3-year statutory barrier for assessment does not apply to that year. Petitioner's 1987 Federal income tax return was filed on or before April 15, 1988. Respondent's notice of deficiency for petitioner's 1987 taxable year was issued on April 11, 1991. Therefore, respondent's notice of deficiency was timely mailed prior to the lapse of the 3-year period of limitations. With respect to petitioner's 1988 taxable year, petitioner and respondent executed an agreement pursuant to the provisions of section 6501(c)(4) prior to the expiration of the time prescribed by section 6501(a). The agreement extended the time for assessment until December 31, 1993. Respondent's statutory notice of deficiency was issued on April 7, 1993. Therefore, respondent's notice of deficiency was timely mailed *107 for the 1988 taxable year. Petitioner's 1989 Federal income tax return was filed on or before April 15, 1990. Respondent's notice of deficiency for petitioner's 1989 taxable year was issued April 7, 1993. Therefore, respondent's notice of deficiency was timely mailed prior to the lapse of the 3-year period of limitations. 19. Respondent's Motion for Sanctions Against Lawrence J. Groskin
Respondent moved for sanctions against petitioner's attorney, Lawrence J. Groskin, under section 6673(a)(2). Respondent alleges that Mr. Groskin unreasonably and vexatiously multiplied the proceedings in this Court. Respondent asks the Court to require Mr. Groskin to pay her excess attorney costs of $ 16,500; i.e., the amount of her "fees" that were incurred because of Mr. Groskin's unreasonable conduct. We agree with respondent that Mr. Groskin's conduct during these proceedings has been unreasonable. His conduct throughout these proceedings has been below the standard that we expect and require of counsel who practice in this Court. From the outset of these proceedings, Mr. Groskin has made no effort to resolve the matters at hand other than in an unnecessarily long trial. Mr. Groskin *108 consistently arrived tardily for meetings that were scheduled with respondent to resolve the matters herein. Mr. Groskin also failed to comply timely with respondent's discovery requests. The Court was made aware of Mr. Groskin's conduct during a telephone conference on July 6, 1994. Mr. Groskin apologized to the Court for his actions and cited personal matters as his excuse for such behavior. At that time, the Court advised Mr. Groskin to consider withdrawing from this case because of his inability to comply with the requirements and Rules of this Court. Mr. Groskin declined to follow our advice. Following this telephone conference, Mr. Groskin's conduct did not improve. First, Mr. Groskin failed to file timely a trial memorandum as required by this Court's standing pretrial order dated January 12, 1994. When the trial memorandum was filed, it did not comply with the Court's Order. Second, Mr. Groskin did not move that certain admissions that had been deemed admitted pursuant to Rule 90 be vacated until the morning of the trial, notwithstanding the Court's instruction to file such a motion requesting such relief before trial. Third, Mr. Groskin filed a motion to extend *109 the time period to file expert witness reports until 10 days after the date on which the expert reports could be exchanged pursuant to the Court's standing pretrial order. Even though the Court gave Mr. Groskin until August 29, 1994, to file these reports, Mr. Groskin did not file these reports until September 1, 1994. When filed, the expert reports failed to comply with the requirements of Rule 143(f). Mr. Groskin's excuse for failing to comply with this Court's Rules was that he did not know such Rules differed from those required by the courts for the State of New York. Fourth, Mr. Groskin attempted to file the expert report of Mr. Howard Madlin 3 days before the trial, on Friday, September 9, 1994, after 4:30 p.m. Finally, Mr. Groskin advanced frivolous arguments regarding the period of limitations, discussed above. If the Court finds that an attorney or other person admitted to practice before the Court has multiplied the proceedings in any case unreasonably and vexatiously, the Court may require that attorney to pay the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct.[9] Sec. 6673(a)(2). Section 6673(a)(2) is derived from section *110 1927 of the Judicial Code, 28 U.S.C. section 1927 (1988), and it has been held that imposition of a sanction under 28 U.S.C. section 1927 requires a "clear showing of bad faith". See, e.g., Oliveri v. Thompson, 803 F.2d 1265, 1273 (2d Cir. 1986); Kamen v. American Telephone & Telegraph Co., 791 F.2d 1006, 1010 (2d Cir. 1986). However, a minority of Courts of Appeals, including the Court of Appeals for the District of Columbia Circuit, do not require such a showing.[10]Reliance Ins. Co. v. Sweeney Corp., 792 F.2d 1137, 1138 (D.C. Cir. 1986); see also In re Ruben, 825 F.2d 977, 983-984 (6th Cir. 1987). This Court has not decided which standard we will apply. Harper v. Commissioner, 99 T.C. 533 (1992). In the Harper case, we held that because the taxpayer's attorney acted in bad faith in unreasonably and vexatiously multiplying the proceedings, we did not need to decide between the Court of Appeals for the Second Circuit's bad faith standard and some *111 lesser standard, such as recklessness or negligence, in applying section 6673(a)(2). Bad faith may be found not only in the actions that led to the lawsuit, but also in the conduct of litigation. Oliveri v. Thompson, supra at 1272. After our careful review of the record in this case, we conclude that Mr. Groskin has acted with bad faith within the scope of section 6673(a)(2). Attorney's fees awarded under section 6673(a)(2) are to be computed by multiplying the number of excess hours reasonably expended on the litigation by a reasonable hourly rate. The product is known as the "lodestar" amount. See Harper v. Commissioner, supra at 549, *112 and the cases cited therein. Respondent did not submit a detailed accounting of the estimated excess time spent on this case. Instead, respondent stated on brief that she spent a total of 494 hours working on this case. Of this amount, she estimates that one-third (165) of the hours devoted to this case were a direct consequence of Mr. Groskin's improper and unprofessional conduct. Because respondent did not submit a detailed accounting of the hours spent on this case, it is difficult to ascertain that portion of respondent's hours that was caused by Mr. Groskin's unreasonable and vexatious conduct. Based on our review of the record, including our contact with Mr. Groskin during the course of the proceedings, we believe that Mr. Groskin's conduct multiplied the proceedings by 5 percent of the total hours claimed by respondent. Therefore, we will sanction Mr. Groskin for 24.7 hours. Respondent has requested that we impose a fee of $ 100 per hour for the excess attorney time. In Harper v. Commissioner, supra at 551, this Court imposed sanctions for respondent's excess attorney's fees in the amount of $ 100 per hour for a case in which respondent's *113 counsel worked in the District Counsel's office in New York City. For the reasons stated in the Harper case, we find that $ 100 per hour is a reasonable rate for the excess attorney's fees incurred by respondent. To arrive at the lodestar amount, we multiply respondent's 24.7 excess attorney hours by the hourly rate of $ 100. We find that $ 2,470 is a reasonable amount for respondent's excess attorney's fees. We therefore will order that Mr. Groskin personally pay respondent $ 2,470, that he make payment by means of a certified check, cashier's check, or money order in favor of the Internal Revenue Service, and that such payment be delivered to respondent's counsel at the Office of District Counsel in New York City not later than 30 days from the date the order is served. 20. Respondent's Motion for Sanctions Against Petitioner
This Court is authorized to impose a penalty of up to $ 25,000 against a taxpayer whenever it appears that: (1) The taxpayer instituted proceedings primarily for delay; (2) the taxpayer's position was frivolous or groundless; or (3) the taxpayer unreasonably failed to pursue available administrative remedies. Sec. 6673(a)(1). Respondent moved *114 for sanctions against petitioner pursuant to this authority. Respondent points to the facts that petitioner did not make herself available for cross-examination, nor did she present any credible evidence to prove her case. Petitioner's failure to offer evidence at trial can be the basis for the imposition of sanctions. Stamos v. Commissioner, 95 T.C. 624, 638 (1990), affd. without published opinion 956 F.2d 1168 (9th Cir. 1992). Based on our careful review of the record at hand, however, we decline to impose a penalty under section 6673(a)(1) against petitioner. Although petitioner did not present any credible evidence to prove her case, petitioner's counsel is primarily responsible for such failure. Mr. Groskin failed to submit expert reports in compliance with Rule 143(f), and did not file answers to respondent's request for admissions. As a result, petitioner was restricted in presenting evidence at trial. With respect to all arguments made by petitioner, we have considered said arguments and have found them to be without merit. To reflect the foregoing, Decisions will be entered under Rule 155. Footnotes
1. Upon respondent's motion, the Court ordered the two cases resulting therefrom consolidated for trial, briefing, and opinion.↩
1. This amount is 50 percent of the interest due on the portion of the deficiency that is attributable to fraud.↩
2. This amount is 50 percent of the interest due on the portion of the deficiency that is attributable to negligence.↩
2. A trial was held on Sept. 12-13, 1994. Petitioner testified by way of direct examination. However, petitioner did not make herself available for cross-examination. Upon an oral motion by respondent, we struck petitioner's testimony from the record.↩
3. Respondent served petitioner with a request for admissions on Mar. 29, 1994, and, shortly thereafter, filed the original of the request with the Court. See Rule 90(b). Petitioner did not respond to this request within 30 days after service. Thus, petitioner is deemed to have admitted each matter contained in the request. Rule 90(c).↩
4. In her brief, petitioner asks the Court to take judicial notice of a magazine article which gives estimates of breakage, discounts, bad checks, theft, and shoplifting expenses incurred by liquor stores. We refuse to do so.↩
5. Respondent also prepared bank deposit analyses with respect to petitioner's 1982, 1983, and 1984 taxable years. This analysis is a well-recognized method of reconstructing income, and bank deposits are prima facie evidence of income. Marcello v. Commissioner, 380 F.2d 494, 496-497 (5th Cir. 1967), affg. in part and remanding in part 43 T.C. 168↩ (1964). Although the bank deposit method was not used in the computation of petitioner's deficiency, the results of the bank deposits and cash expenditure analysis substantially support the results generated by the specific item and the percentage markup methods of proof.
6. Respondent also did not include these amounts in petitioner's income.↩
7. Sec. 325(a) of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 616-617, amended sec. 6653(b) effective for taxes the last day prescribed by law for the payment of which, without regard to extensions, was after Sept. 3, 1982. Following its amendment, sec. 6653(b) provides in relevant part: (1) In General. -- If any part of any underpayment * * *of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. (2) Additional Amount for Portion Attributable to Fraud. -- There shall be added to the tax (in addition to the amount determined under paragraph (1)) an amount equal to 50 percent of the interest payable under section 6601 -- (A) with respect to the portion of the underpayment described in paragraph (1) which is attributable to fraud, and (B) for the period beginning on the last day prescribed by law for payment of such underpayment (determined without regard to any extension) and ending on the date of the assessment of the tax (or, if earlier, the date of the payment of the tax).↩
8. Petitioner was convicted of willfully filing a false income tax return under sec. 7206(1) for the 1983 taxable year. Although a conviction for willfully and knowingly subscribing to a false income tax return under sec. 7206(1) does not estop a taxpayer from denying fraud, a conviction under sec. 7206(1) is evidence of a fraudulent intent to evade taxes. Wright v. Commissioner, 84 T.C. 636, 643-644↩ (1985).
9. See Harper v. Commissioner, 99 T.C. 533↩ (1992), for a discussion of the standards to be considered in implementing the sanctions provided for in sec. 6673(a)(2).
10. It is unclear whether an appeal on attorney sanctions would ultimately be heard by the Court of Appeals for the Second Circuit or the D.C. Circuit. See sec. 7482(b)(1).↩